(137 So. 532)

## HOWARD v. STATE.

### 7 Div. 787.

Court of Appeals of Alabama.
Aug. 4, 1931.

Rehearing Denied Oct. 6, 1931.

W. T. Starnes, of Pell City, and L. H. Ellis, of Columbiana, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, P. J.

■ The indictment in this case charged the appellant with the offense of murder in the second degree only; but notwithstanding this it appears from the record that the court orally charged the jury that the crime charged was "murder in the first degree," and pending the oral charge to the jury, the court charged fully upon the offense of murder in the first degree and instructed the jury: "After considering all the evidence, if you are convinced beyond all reasonable doubt that the defendant is guilty of murder in the first degree, then, the form of your verdict would be: 'We the jury find the defendant guilty of murder in the first degree and fix his punishment at death, or in your discretion, imprisonment in the penitentiary for life.'" We are at a loss to understand this character of instruction by the trial court, as by the express terms of the indictment the accused was not upon trial for any greater offense than second degree murder. We are of the opinion, however, that the erroneous instructions did not militate against or injuriously affect the substantial rights of the accused, as the trial resulted in his conviction of manslaughter only as fixed by the verdict of the jury. Winter v. State, 123 Ala. 1, 10, 26 So. 949. Moreover, it does not appear that an exception was reserved in this connection. Error, therefore, will not be held.

■■ This appellant was charged with having killed his own brother by unlawfully and with malice aforethought, but without premeditation or deliberation, striking him with a rock, or by hitting him with a rock, etc. As stated, the trial resulted in his conviction of manslaughter in the first degree and his punishment fixed at imprisonment *in the penitentiary* at one year. In conformity to the verdict the court pronounced sentence upon the defendant at imprisonment in the penitentiary for one year. This sentence is erroneous, for the statute expressly provides that in all cases in which the imprisonment or sentence to hard labor is twelve months or less, the party must be sentenced to imprisonment

in the county jail, or to hard labor for the county. The attempt of the jury to fix the place or character of punishment was futile and imposed no restriction upon the discretion vested in the judge by section 5265 of the Code 1923; and so much of the verdict as undertook to deal with that feature of the punishment to be imposed should and must be disregarded as surplusage, and the court upon such verdict should proceed to pronounce the sentence authorized by law. That part of the judgment prescribing the place of punishment to be in the penitentiary is reversed, and the cause is remanded to the end that the trial court may impose a proper sentence upon the defendant committing him to the custody of the authorities provided by law. Robinson v. State, 6 Ala. App. 13, 60 So. 558.

Before pleading to its merits, the defendant, as shown by the judgment entry, moved the court in writing to quash the indictment upon the grounds:

"1. Said indictment was not found on legal evidence.

"2. There was no legal evidence before the Grand Jury that the deceased, Earnest Howard, came to his death by or through, or as a result, of any act of this defendant.

"3. There was no legal evidence before said Grand Jury to the effect that the deceased, Earnest Howard, came to his death through or by any unlawful means.

"4. There was no legal evidence before said Grand Jury that returned the indictment in this case as to what caused or produced the death of the deceased, Earnest Howard.

"5. There was no legal evidence before said Grand Jury which returned the indictment in this case, from which said Grand Jury could draw the conclusion or find that Earnest Howard came to his death as the result of having been struck by the defendant with a rock.

"6. There was no legal evidence before said Grand Jury which returned the indictment in this case, upon which said Grand Jury could base a finding that the death of the deceased, Earnest Howard, was the result of any act at the hands of the defendant."

■ Whereupon the state moved to strike the foregoing motion to quash, but the court overruled the state's motion; and also overruled the motion of the defendant to quash the indictment. In this connection it was affirmatively shown that several witnesses were examined on this particular case by the grand jury who afterwards returned the indictment, and it has many times been decided, where this is true, "no inquiry into the sufficiency of the evidence can be indulged." Appellant cites and relies upon the case of Sparrenberger v. State, 53 Ala. 481, 25 Am. Rep. 643, as authority to sustain his strenuous insistence in this connection to the effect

that the court erred in overruling his motion to quash the indictment. The Sparrenberger Case, supra, does not sustain appellant in this insistence. The above rule, quoted, was taken from the Sparrenberger Case, and is the law. This case has been repeatedly followed for many years.

In Gunter v. State, 21 Ala. App. 554, 110 So. 58, 59, this court said:

"The motion to quash the indictment on the grounds that the grand jury by which said indictment was found did not have sufficient legal evidence before it to find said indictment, or did not have before it any legal evidence tending to establish the corpus delicti of the offense charged, was wholly without merit, and the court properly so held. It affirmatively appears that witnesses appeared before the grand jury and gave evidence in this case; the injured party and another so testified; and the recognized rule is:

" 'When it appears witnesses were examined by the grand jury, or the grand jury had before them legal documentary evidence, no inquiry into the sufficiency of the evidence is indulged.' Sparrenberger v. State, 53 Ala. 481, 25 Am. Rep. 643; Washington v. State, 63 Ala. 192; Agee v. State, 117 Ala. 169, 23 So. 486; McLeod et al. v. State, 8 Ala. App. 329, 62 So. 991."

There was testimony of several witnesses to the effect that on or about the 27th day of July, 1926, this appellant, during a "fuss," or quarrel with his brother Earnest Howard, the deceased named in the indictment, picked up a rock, about the size of a goose egg, threw it at deceased and struck him on the head, above his eye, and broke or fractured his skull. That he was taken to a doctor soon thereafter, and thence to the hospital at Pell City, where an operation was performed upon him. In this connection Dr. R. A. Martin, one of the operating surgeons, testified: "I live at Pell City; I knew Earnest Howard; I remember to have tended on him some time in July 1926; when I saw him he was at the hospital at Pell City; when I saw him he was in a very serious condition; he was suffering from a fractured skull; there was a wound over his right eye; the skull was broken and it was pressing on his brain, and we removed all of that, and then made pictures to see what condition it was in and to see if all the fragments of the skull had been removed and we treated him there at the hospital for a week or ten days, as I remember it now. * * * We took out several pieces of the bone; we did not take any of the brain out but there was a little that run out, perhaps a table spoon full. He stayed in the hospital a few days for treatment and had to have dressings for some time; when I saw him he was in a serious enough condition to produce death." And on redirect examination this witness stated: "I would say that the boy had received a very serious wound and

a great number of such cases die; just as the wound was when the patient came to me for treatment and before he responded to treatment, I would consider the chances very much against him." There was other evidence of like import, and there was some conflict in the testimony of the attending physicians.

We are of the opinion, from the foregoing, that the question of whether this wound caused the death of the deceased, or contributed thereto, or accelerated it, was for the jury to determine, although the death of the deceased did not occur until four or five months thereafter. It was shown by attending physicians that the immediate cause of his death was hemorrhage of the brain.

At common law if more than a year and a day intervene between the injury and the death of the victim, the injury is not legally deemed the cause of the death, and the person who inflicted it is not criminally responsible for the homicide. The same rule is sometimes declared by statute in certain states. The common-law rule prevails in this state, and this rule is also to the effect, when the death does occur within a year and a day, it relates back to the time at which the injury was inflicted, and the accused must be tried according to the laws in force at that time.

There was conflict in the evidence as to the facts and circumstances of the difficulty. Some of the evidence was to the effect that the wound in question was caused by the kick of a mule, but all these conflicts were for the jury to decide, and the court properly submitted the case to the jury for determination.

Several exceptions were reserved to the court's rulings upon the admission of evidence, but we discover no reversible error in any of these rulings, nor in the refusal of the several charges refused to defendant.

The record disclosing no error of a reversible nature affecting the judgment of conviction, said judgment is affirmed. The cause must be remanded to the lower court for proper sentence as hereinabove discussed.

Affirmed. Remanded for proper sentence.