234 So.2d 28

Allen Lonzo DIVINE, alias

v.

STATE of Alabama.

4 Div. 289.

Supreme Court of Alabama.

March 19, 1970.

Rehearing Denied April 30, 1970.

B. B. Rowe, Robert E. Cannon, Elba, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

MERRILL, Justice.

This appeal is from a denial of a petition for writ of error coram nobis by petitioner, who is in the penitentiary under a death sentence for first degree murder.

In September, 1964, appellant's father secured a peace warrant for appellant and rode with a policeman and a deputy sheriff to his home where appellant lived with him. When they arrived at the father's home, the policeman got out of the automobile and walked a few steps toward the house. Appellant shot him from inside the house with a shotgun and he died.

Appellant was indicted, convicted and sentenced, and an appeal was taken to this court. We affirmed. Divine v. State, 279 Ala. 291, 184 So.2d 628. Appellant's defense in circuit court was that he was insane and that he was drunk when the offense was committed.

The petition for writ of error coram nobis was filed December 15, 1966, heard in January, 1967, and the opinion and order of the trial court denying the petition was filed February 21, 1967. The opinion of Judge Eris Paul fills nine transcript pages and is a full, complete and studious answer to the petition. Since the parties to this cause are familiar with it, we will not reproduce all of it, but we are in accord with his conclusions and affirm the judgment.

On appeal, appellant presents two questions by assignments of error. Assignments 1 and 4 charge that the trial court erred in denying appellant's application for a medical examination to determine his sanity under Tit. 15, §§ 425, 428, Code 1940. The trial court appointed two practicing physicians to examine appellant and held a hearing. Both doctors testified that in their judgment, appellant was sane. This testimony and full consideration of this question is contained in our opinion in Divine v. State, 279 Ala. 291, 184 So.2d 628, and need not be restated here. The opinion in that case followed the law and it was restated in Eaton v. State, 280 Ala. 659, 197 So.2d 761. Since that question was settled on appeal, and this proceeding merely seeks to reopen a question already fully considered and determined on appeal to this court, it will not now be reconsidered on an appeal from a judgment denying a petition for writ of error coram nobis. Ex parte Seals, 271 Ala. 622, 126 So.2d 474; cert. denied, 366 U.S. 954, 81 S.Ct. 1909, 6 L.Ed.2d 1246.

Assignments 2 and 3 charge error in the denying of the petition on the basis of the newly discovered evidence presented to the court. This newly discovered evidence resulted from a clemency hearing. Appellant applied to the Governor for a clemency hearing and it was held on August 8, 1966. At that time, Governor George C. Wallace entered an executive order continuing the hearing so that appellant could be sent to Bryce Hospital for psychiatric observation and examination. On July 24, 1967, depositions of Drs. J. S. Tarwarter, T. H.

Patton and W. B. Robinson, members of the examining board, and Dr. R. G. Kibbey, another doctor at the mental hospital, were taken.

In his opinion, Judge Paul quoted extensively from the testimony of the doctors at Bryce Hospital. Each of the doctors testified that it was their diagnosis and conclusion that at the time petitioner was admitted to the hospital on August 29, 1966, at the time he was discharged on September 29, 1966, and on the date of the commission of the offense, September 2, 1964, he was suffering from no psychosis, delusions, hallucinations, compulsions or any other evidence of psychosis. The gist of their testimony was that their diagnosis of appellant's condition was alcohol first and, secondly, an emotionally unstable personality; and that, based upon what he had told them, and a reading of the record of the trial and a report from a social worker in Elba, who had interviewed members of appellant's family, all concluded that appellant was so drunk that he was incapable of premeditation when he murdered the policeman. We quote from Judge Paul's opinion as he considered this facet of the case:

"The question then presents itself whether trained psychiatrists are able to examine a person on a given day, and determine from the examination that he was drunk at a time two years prior thereto, in fact, so drunk that he was not able to form an intent to commit a crime or to be able to premeditate a crime. All of the psychiatrists in this case testified that they had before them the history elicited from the petitioner, and the transcript of the official record of the trial, which was forwarded to them by the Governor along with the petitioner when he came for observation. In addition to the history obtained by them from the patient himself, all of the doctors, except Dr. Kibbey, testified that they read and studied the record of the trial, including all the evidence carefully. A part of the history considered by the doctors in making their determination in this cause was obtained by a social worker of the hospital who interviewed some of the defendant's family in Elba, Alabama. The record is not exactly clear which of the defendant's family was interviewed except that it shows that a brother was talked with. A report was made from the interviews with the defendant's family and submitted to the doctors, which they took and considered along with the court record, their observation and interviews with the defendant. It is impossible to know what information, if any, that the board of doctors had before them that was not in the court record and before the jury. The defendant did not testify himself on hearing of the petition to appoint an insanity commission tried in the circuit court, nor did he testify in his behalf on the trial of the cause. But, so far as is known, all the other matters reviewed by the doctors and upon which they made their findings were in the court record and before the jury, and also before the Supreme Court on review. The record of trial contained evidence that the defendant was drinking on the date of the alleged offense. There was no evidence shedding any light on how long he had been drinking, how much, or what petitioner might have been drinking. The strongest evidence on this matter, from the petitioner's standpoint, was from D. O. Divine, petitioner's father, on direct examination by petitioner's attorneys. The witness was asked, 'What was his condition relative to being sober or drunk?' He answered, 'He was saying about it, but he was drinking high.' Transcript of Trial, page 189. The other witnesses who appeared in the cause and saw him near the time of the shooting testified, in substance, that he did not appear to be drunk. These witnesses were friends and neighbors of petitioner's, and the sheriff, all of whom had known him for a long period of time. The Court must conclude, therefore, that the only way the doctors could have determined that the defendant was drunk on September 2, 1964, and the degree

of such drunkenness, was to rely completely on information obtained from him, the defendant, on their interviews while a patient at Bryce Hospital. It necessarily follows, that the jury was in much better position to determine the issue of drunkenness than were the doctors since they had the benefit of the witnesses appearing personally before them except the defendant who chose not to testify. To reach any other conclusion would be to establish this commission of experts as a reviewing board of the verdict of a jury on a question of fact.

"It has been recognized and accepted for many, many years by the medical profession, laymen, and the Courts that experts in mental diseases, as are the four psychiatrists who testified on this hearing, are qualified to give an opinion and to testify as to the existence or nonexistence of diseases of the mind, whether the patient is sane or insane. However, this Court knows of no precedent in law where such experts have been called upon to testify that an individual was drunk, and the degree of such drunkenness, on a date approximately two years prior to the examination.

"On the hearing of the petition for writ of error presently before this Court, the defendant testified as a witness in his own behalf. As stated before, he had not testified in any of the other hearings or at the trial before the jury. This Court feels that no purpose would be served by relating his testimony in this order. Anything that he testified certainly was not unknown to him or his lawyers at the time of trial and would not be newly discovered evidence. It is not insisted that he did not understand fully his constitutional rights to testify as a witness, (see pages 232–234 Transcript of Trial) nor is it insisted that he was not diligently, adequately, and ably defended by the lawyers who represented him in all matters growing out of the offense for which he was tried, including the appeal to the Supreme Court of Alabama, and on this petition for writ of error coram nobis."

■ The writ of error coram nobis does not lie to enable an accused to question the merits of the case or to correct an issue of fact which has been adjudicated, even though wrongfully determined, or to review errors concerning facts known to the court with reference to which the court acted at the time of the trial. Thomas v. State, 274 Ala. 531, 150 So.2d 387; Ex parte Seals, 271 Ala. 622, 126 So.2d 474; Johnson v. Williams, 244 Ala. 391, 13 So.2d 683.

■ Where the evidence is in conflict on the question of the defendant's intoxication, or being under the influence of drugs, or his sanity, and their effect upon intent and other elements of murder, such questions, with proper instructions, are properly submitted to the jury. Oliver v. State, 232 Ala. 5, 166 So. 615; Bowen v. State, 274 Ala. 66, 145 So.2d 421; Carr v. State, 43 Ala.App. 642, 198 So.2d 791, cert. denied 281 Ala. 716, 198 So.2d 798, cert. denied, 389 U.S. 877, 880 S.Ct. 175, 19 L.Ed.2d 165.

■ During the course of the trial, the jury was confronted with conflicting evidence as to the degree of appellant's intoxication on the day in question, and his mental condition. The evidence offered to the lower court on the petition for writ of error coram nobis went only to this question—appellant's intoxication at the time of the commission of the crime. It was then, in effect, merely cumulative and this court has held that alleged newly discovered evidence which is merely cumulative is not sufficient to grant a petition for writ of error coram nobis. Ex parte Cobern, 274 Ala. 354, 148 So.2d 631, where we said:

"The basis of this petition is no more than newly discovered evidence of a cumulative character on the most prominent issue involved in the original trial. It is settled by the authorities that an error of fact which may be used as a basis for a writ of error coram nobis does not consist of new evidence going to the merits of the case and which was not

discovered in time for use on the original trial or on motion for new trial. Lamb v. State. 91 Fla. 396, 107 So. 535; Asbell v. State, 62 Kan. 209, 61 P. 690; Howard v. State, 58 Ark. 229, 24 S.W. 8. See Ex parte Williams, 268 Ala. 535, 108 So. 2d 454, wherein we quoted from Lamb v. State, supra, with approval.

"If a judgment rendered and reconsidered on motion for new trial in the circuit court and which is affirmed in the appellate court may be set aside because of newly discovered evidence in regard to issues involved in the original trial, it would indefinitely protract litigation, destroy the stability and certainty of judicial proceedings, and open wide the door to perjury and fraud."

A report of the lunacy commission provided for in Tit. 15, § 425, is evidence, but it is not mandatory that the trial court be governed solely by the report. Ex parte State, 268 Ala. 524, 108 So.2d 448. In that case, we said:

"* * * What we do say is that to require the judge to act on the presentation of the report alone and to foreclose him from exercising any discretion is to take judicial power from the judiciary and place it in the hands of an officer of the executive department of the state government. If we were to say now that the judge abused his discretion because he failed to act when the report of the superintendent was before him, then we would be giving the report a mandatory effect which the Constitution forbids the report to have. Thus it seems to us clear that there has been no abuse of discretion by the respondent in this case."

This case was originally assigned to another member of the court and was reassigned to the author of this opinion on March 9, 1970.

Affirmed.

LIVINGSTON, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.