288 So.2d 803

Alice PRICE, alias

v.

STATE.

6 Div. 485.

Court of Criminal Appeals of Alabama.

Jan. 15, 1974.

William J. Baxley, Atty. Gen. and William T. Musgrove, Jr., Special Asst. Atty. Gen., for the State.

Rogers, Howard, Redden & Mills and Robert M. Harper, Birmingham, for appellant.

## PER CURIAM.

Appellant was convicted of murder in the first degree and sentenced to imprisonment for life in the penitentiary. From this judgment of the court, she has appealed.

The evidence offered by the state was circumstantial and was substantially as follows: On the afternoon of January 13, 1972, the appellant was seen by Ruby Leigh Hawkins, about 2 p. m., walking down an alley behind the Hawkins' home with a pistol in her hand. Appellant was going in the direction of a white station

wagon which was parked in an alley close by. Soon thereafter Mrs. Hawkins heard a noise which she described as, "pow." Immediately the white car backed out, and the deceased jumped out of the car and ran. The witness further testified that she heard appellant say as she passed the house, "Uh-huh, son-of-a-bitch, I got you now."

Mary Lyons testified that she lived near the scene of the occurrence at Route 6 in Birmingham, Jefferson County, Alabama, and that the deceased, Virginia Ruth Mc-Bride Browning, lived with her in the same house. On the date in question, she heard a noise outside of her house and walked out and saw a white station wagon, which belonged to Charlie Price, behind her house and that she then returned inside. Soon thereafter, she heard screaming and hollering and went back outside and saw the appellant walking across a field behind the house. After hearing a further disturbance, she went down the street and saw the deceased lying on the ground.

Cassandra Bryant Nolan testified that at about 2 o'clock January 13, 1972, she saw the deceased, Virginia Ruth McBride Browning, in Charlie Price's car in a ditch on Sixty Seventh Street. She further testified that with some help from bystanders, she put the deceased in her car and carried her to Carraway Hospital where she was turned over to attendants in the Emergency section.

William L. Allen, Deputy Coroner of Jefferson County, testified that he was present when an autopsy was performed on the deceased by Dr. George F. Scofield; that he observed a gunshot wound with entry on the right shoulder of the deceased.

Dr. Scofield testified that he was a licensed physician and practicing pathologist at the Carraway Hospital in Birmingham; that on January 13, 1972, he performed an autopsy on the deceased, and that it was his opinion that she died of a gunshot wound which penetrated the pulmonary artery.

State witness J. O. Butler, Jr., a detective working with the Jefferson County Sheriff's Department, testified that he investigated the incident, and upon arriving on the scene, the appellant came down the street toward him; that the first words spoken by the appellant were "I did it, I did it." After stopping near a sheriff's patrol car, she continued speaking, saying she was at home; that she saw her husband, Charlie, drive down the alley toward Ruth's house; that she went into the house and got a gun, walked toward Ruth's house and saw Ruth getting in the car with Charlie; that she walked over to the passenger side of the car, took the gun out of her bosom and shot Ruth; that she then threw the gun away in a field. He further testified that no one had said anything or done anything to her at this time, but had merely listened to her statement. She was arrested and taken to the Jefferson County Sheriff's Department, where she was informed of her Miranda rights and thereafter gave a statement which was recorded by a tape recorder.

On January 18, Detective Butler carried a copy of the statement, which had been transcribed by a stenographer employed in the sheriff's office, to the appellant; that she read and signed it. He further testified that she had given the statement in his presence; that no one else was present except the appellant and him; that she was not offered any inducement, threatened, coerced, nor made any promise to induce her to give the statement; that when the statement had been transcribed and presented to her for her signature, she read it, said she would sign it and did sign it.

Sometime between January 13, 1972 and January 18, 1972, she had employed an attorney who was not present when she signed the statement presented to her on the 18th. There is no evidence that she asked for nor indicated a desire to have

her attorney present when the statement was signed and returned to Detective Butler.

The first argument advanced by appellant is that the state failed to prove the corpus delicti, and that the court was in error in admitting testimony of any confession in the absence of independent proof of the corpus delicti.

■■ In a homicide case, the burden is cast upon the state to prove beyond a reasonable doubt the fact of death and the criminal agency of some person causing it. Moss v. State, 32 Ala.App. 250, 25 So.2d 700, cert. den. 247 Ala. 595, 25 So.2d 703. It seems that this requirement is satisfied when it appears that the death is not a result of an accident or natural causes or suicide. Shelton v. State, 217 Ala. 465, 117 So. 8. However, it is also firmly established that the corpus delicti in a homicide case may be proved by circumstantial evidence, as in other criminal cases. Moss v. State, supra; Hill v. State, 207 Ala. 444, 93 So. 460; Spain v. State, 37 Ala.App. 311, 68 So.2d 53.

■ If a reasonable inference of the existence of the corpus delicti can be inferred from the evidence, the court should submit to a jury, for its consideration, the weight and sufficiency of the evidence tending to support such inference. McCall v. State, 262 Ala. 414, 79 So.2d 51; Hines v. State, 260 Ala. 668, 72 So.2d 296.

■ It appears to the court in the light of the above cited authorities that there is ample evidence, independent of any confession or inculpatory statement, from which the jury could draw a reasonable inference of the existence of the corpus delicti of the offense charged in this case. This question was raised before the court by objections to the testimony, motion to exclude, and motion to suppress the evidence, all of which were overruled by the court. We hold that there was no error in this action on the part of the trial court.

■ A confession is not "involuntary and inadmissible if it is not transcribed verbatim as related by the prisoner. If the transcription is substantially as related and affirmed by the prisoner as correct, it is none the less admissible." Goldin v. State, 271 Ala. 678, 127 So.2d 375; Dennison v. State, 259 Ala. 424, 66 So.2d 552.

■ The transcription of the confession made by appellant on January 13, 1972, after having been given the Miranda rights and being apparently free from inducements, threats, promises or hope of reward, was read over and signed by appellant together with the attached waivers as shown by the exhibit thereof. There is no testimony that she acknowledged or affirmed it as correct in direct language. However, we think from the totality of circumstances beginning with the making of the statement to the detectives and extending to the actual fixing of her signature, a reasonable inference can be drawn that she did so affirm and acknowledge it as correct.

■ The true and basic test of the admissibility of a confession is whether it is freely and voluntarily made. See numerous cases cited in Alabama Digest, Criminal Law, Volume 6, ☜517(1).

We hold there was no error in the admission of confessions from this viewpoint.

Appellant raises the further point that her attorney, employed after making an oral statement but before it was transcribed, was not present at the time she placed her signature on the transcribed statement, which is marked Exhibit 5. She contends, for this reason, the statement was not admissible in evidence.

The record before us indicates that at the time the written inculpatory statement of appellant-defendant, which she had duly signed, was offered and admitted in evidence, no testimony had been adduced by which the trial court was informed that an attorney for defendant had been employed by her or anyone else in her behalf.

The record indicates that the attorney for her at the time of making the objection to the admission in evidence of the exhibit stated to the court that defendant had employed an attorney. This statement, however, was not evidence to be considered by the trial court.

The objection by the defendant at that point, based on such employment, was without legal efficacy. The trial court was under no legal duty to cast about and determine evidential existence of such employment. Defendant was not precluded from adducing evidence that such employment had taken place.

It appears that later, on cross examination, the officer-witness, who presented the transcribed inculpatory statement to the defendant for her signature, admitted that at the time of such signature, the defendant was represented by an attorney and that he was informed of such employment. There was no other evidence of such employment in the record prior to this cross examination.

Defendant, on the elicitation of such evidence, made no motion to exclude the signed statement (Exhibit 5), which was lawfully in evidence at that time, and invoked no ruling of the court with respect thereto. The defendant thereafter rested without putting any witness or the defendant on the stand.

In the absence of a motion to exclude this particular evidence (Exhibit 5) and a ruling by the trial court on such motion, there was nothing for this court to review. Blair v. State, 28 Ala.App. 430, 187 So. 645, cert. den. 237 Ala. 474, 187 So. 648; Alabama Digest, Volume 7, Criminal Law, ☞1028.

Under the circumstances, we pretermit considering appellant's contention that the trial court erred in admitting into evidence said statement (Exhibit 5) because her attorney, a fact known to the officer, was not present when she signed it.

The exceptions reserved to the oral charge of the court are too general and fail to point out substantially the language of the charge excepted to.

The court gave five and refused twenty-two written charges requested by appellant.

Charges 1 and 2 are affirmative and were properly refused.

The principles sought to be set out in the remainder of the charges were covered by those given or by the very adequate and full oral charge of the court. No error appears in this respect.

We find no error of a reversible nature in the record and the cause is due to be and the same is hereby

Affirmed.

CATES, P. J., and ALMON, TYSON and DeCARLO, JJ., concur.

HARRIS, J., concurs in result.