307 So.2d 47

**Charles Edward SMITH**

**v.**

**STATE.**

**3 Div. 294.**

Court of Criminal Appeals of Alabama.

Jan. 17, 1975.

Jasper B. Roberts, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant was indicted for the first degree murder of his ten week old son, Charles Edward Smith, Jr. To that indictment he plead not guilty and not guilty by reason of insanity. A jury found appellant guilty of second degree murder and fixed his punishment at forty-five years in the State penitentiary.

According to Mrs. Virginia Ann Smith, appellant's wife and mother of the deceased, she departed their home at approximately 2:30 P.M. leaving appellant and Charles, Jr., at the house alone. Except for some bruises on his knees caused by appellant's spanking of the child on at least two occasions during the previous week, the child was otherwise in normal condition. When she returned from work a little before midnight, the child was having difficulty breathing. Upon closer examination, his eyes were dilated, his mouth was drawn to the right side, and his body was completely limp. Mrs. Smith took the child to the emergency room of Baptist Hospital where he was examined by Dr. Hugh Frazier who testified that the child was semicomatose with dilated pupils and fresh hemorrhaging in the back of the eye, and generally in "very bad shape." Although no fluid was removed by subdural taps performed on both sides of the child's head, both Dr. Frazier and another examining physician concluded that the child had sustained an injury to the head. Dr. Frazier was also allowed to testify that the injury in his opinion did not naturally occur in the sense that it could not have been self-inflicted by a child too young to walk or crawl. The child suffered a respiratory arrest three and one-half hours after the initial examination and a cardiac arrest twenty-four hours after that examination. His condition continued to deteriorate and death occurred sixteen days later. According to the State Toxicologist who performed the postmorten examination, "the child's death was the result of brain damage and hemorrhage associated with a blow to the head."

Defense counsel introduced a certified copy of the death certificate signed by the Coroner of Montgomery County. Although the cause of death thereon was listed as "severe generalized brain damage secondary to external blunt trauma," the form entry for "interval between onset and death" was given as "approx. 4 days." This discrepancy was not reconciled due to the fact that the coroner was deceased at the time of the trial. Defense counsel also introduced the report of another physician, Dr. George R. Cocks, who examined the child four days after he had been admitted to Baptist Hospital. In that report the physician stated that he could "see no evidence of trauma to the head." Finally, there was introduced the report of Dr. John G. Kimbrough who x-rayed the child's body upon admission to the hospital. Those x-rays revealed no fractures of the child's skull.

The first six of appellant's eight contentions of error address themselves to whether the prosecution's evidence made out a prima facie case for second degree murder.

Appellant cites Hardison v. State, 30 Ala.App. 40, 200 So. 635, for the proposition that there was insufficient evidence to establish that the deceased died as a result of an injury inflicted by him. In *Hardison* the defendant had been indicted for the killing of his wife by striking her with a blunt instrument. The murder conviction, however, was reversed because the trial judge refused to accept into evidence testimony that the deceased had sustained another blow to the head at a point in time earlier than that fixed by expert medical testimony as the approximate time of the fatal blow. Guilty agency, being a part of the corpus delicti of the crime, must be established by substantial evidence; it may, however, be established by circumstantial evidence. Vernon v. State, 239 Ala. 593, 196 So. 96. The rule applies with equal force in prosecutions for criminal homicide. Spain v. State, 37 Ala.App. 311, 68 So.2d 53. There was substantial evidence establishing criminal agency (i. e., that the child's death was caused by other than natural or accidental injury). First, there was the death of a ten week old child who, prior to Mrs. Smith's departure for work on the day in question, was shown to be healthy and normal in every respect. Secondly, there was the testimony of the attending physician at the emergency room where the child was taken by his mother; specifically, that the child was in a semi-comatose state, he had suffered an injury to the head not likely to have been self-inflicted, he was in very bad shape, and he had a respiratory arrest and a cardiac arrest during his first day in the hospital. Without reference to any admissions or declarations made by the appellant, Duck v. State, 38 Ala.App. 652, 92 So.2d 55, we hold that the prosecution met its burden of proof in showing that the victim died because he was killed as opposed to dying from natural or accidental causes. Welch

v. State, 45 Ala.App. 657, 235 So.2d 906. As this Court held in Price v. State, 52 Ala.App. 21, 288 So.2d 803:

"If a reasonable inference of the existence of the corpus delicti can be inferred from the evidence, the court should submit to a jury, for its consideration, the weight and sufficiency of the evidence tending to support such inference." (Citation omitted). 288 So.2d at 806.

Appellant argues in the alternative that even if there was sufficient evidence of the corpus delicti, there was nonetheless a failure on the part of the prosecution to establish his criminal agency. See Pearce v. State, 14 Ala.App. 120, 72 So. 213. We disagree. The appellant's wife testified that he and the baby were alone when she departed for work and were still alone upon her return some nine hours later. It was also her testimony that when she returned from the hospital, appellant, who had remained at home, was in a hysterical state and expressed surprise that police officers were not accompanying her. According to the testimony of the investigating officer from the Youth Aid Department of the Montgomery Police Department, Orvie Locklar, who visited the Smith home the following morning, appellant again stated that he had expected the police to come the night before. After proper Miranda and pre-Miranda predicates were laid, Locklar testified that he had the following conversation with the appellant:

"Q. Now, I will ask you, did he make a statement to you? Refer to your case file, your notes. Did he make a statement to you?

"A. Yes, sir, he did. I asked him, I said, 'Mr. Smith, did you have a reason for hurting your baby?' And he says, 'Do you believe in the Bible?' I said, 'Yes I do.' He said, 'Do you believe in demons?' I said, 'Yes I do.' And I quote. He says, 'That baby has a demon inside. I have a demon within me, and

my seed has inherited it. And it must be destroyed.'

"Q. And that is what he told you?

"A. Yes, sir.

"Q. Did he tell you anything about whether or not he had expected you? What else did he tell you?

"A. Yes, sir. He said that he was dressed the night before, waiting for us to come. And that he had been expecting us and he would cooperate in any way that we needed him to."

We are of the opinion that the trial judge correctly submitted to the jury the question of appellant's guilt.

■ Appellant next asserts that certain discrepancies between the observations made of the deceased when he was admitted to Baptist Hospital and those made by a toxicologist during the postmorten examination some sixteen days later, suggest that the blow to the head might have been sustained after the child's admission. Dr. Frazier observed no external bruises on the child's head and was unable to draw any fluid from the head by means of sub-dural taps. The toxicologist, on the other hand, found a bruise on the back of the child's head and sub-dural hematoma. Notwithstanding the fact that this alleged inconsistency was explained on redirect examination of the toxicologist in that the bruise was probably a bed or pressure sore, the inconsistency, if it existed at all, presented a question of fact for the determination of the jury. Howard v. State, 24 Ala.App. 512, 137 So. 532, cert. denied 223 Ala. 529, 137 So. 535. Furthermore, even if the jury believed from the totality of the evidence that the treatment given the deceased during his stay at Baptist Hospital was negligent or unskilled, such a finding would in no way serve as a defense to the person who inflicted the dangerous, if not mortal, injuries upon the deceased. Warren v. State, 32 Ala.App. 273, 25 So.2d 51.

On the basis of the foregoing evidence, we hold that there was sufficient showing of the corpus delicti of the crime charged. See Brickley v. State, 46 Ala.App. 413, 243 So.2d 493, reversed on other grounds 286 Ala. 546, 243 So.2d 502. Having made out a prima facie case against the appellant, the motion to exclude the evidence was properly overruled.

■ Appellant also argues that the evidence of his insanity was strong and undisputed and, accordingly, the requested affirmative charge with hypothesis was erroneously refused. We agree with appellant that in exceptional cases of insanity the proof may be "so strong and undisputed, that the jury should be instructed in like form." Boyle v. State, 229 Ala. 212, 154 So. 575. However, our Supreme Court in *Boyle* went on to say:

"[C]ourts should be careful not to invade the province of the jury in cases of this character. Although the evidence may be offered only by the defense, and all tend to one conclusion, yet in view of the presumption of sanity, if the evidence is inconclusive, and reasonable inferences may be drawn that the act was that of a sane man as defined by law, the affirmative charge should be refused." 229 Ala. at p. 222, 154 So. at p. 583.

The trial court judge in his oral charge to the jury correctly instructed them in accordance with Parsons v. State, 81 Ala. 577, 596–597, 2 So. 854, 60 Am.Rep. 193. In light of appellant's contention that the affirmative charge should have been granted, the expert testimony and other evidence germane to the issue of sanity must be examined.

Appellant called a single witness, Dr. Stonewall B. Stickney, who, after being properly qualified, testified that based on his two examinations of appellant he was competent to stand trial but was legally insane at the time of the alleged homicide. Dr. Stickney was of the opinion that appellant was suffering from paranoid schizophrenia.

It was developed on cross examination that appellant was voluntarily admitted to

Bryce Hospital in February and August of 1972 for periods of five and two months, respectively. It was during this time that appellant met the mother of the deceased, also an in-patient at Bryce Hospital, and the child was conceived. Diagnoses by staff physicians during these periods varied but all concurred to the extent that appellant was not psychotic, rather that he was suffering from hysterical or explosive personality or, according to one of the physicians, latent schizophrenia. Shortly after April 7, 1973, the date of the incident for which appellant was indicted, he was involuntarily readmitted to Bryce Hospital. After some five months of observation and further examinations, he was diagnosed as non-psychotic, competent to stand trial, and released back to the custody of the court.

Where, as here, the evidence is in conflict as to the defendant's sanity at the time of the alleged criminal homicide, such question, with proper instructions, is properly submitted to the jury. Divine v. State, 285 Ala. 488, 234 So.2d 28. In Cunningham v. State, 47 Ala.App. 730, 261 So.2d 69, this Court held that even though the *only* evidence presented regarding the defendant's sanity at the time of the commission of the homicide was that of one physician who testified that in his opinion the defendant was not entitled to the affirmative charge on that ground. Citing George v. State, 240 Ala. 632, 200 So. 602, the Court continued:

> "The opinion of expert witnesses as to insanity are not conclusive upon the jury; they are to be weighed like other evidence, such evidence being intended to aid the jury, and its value depending largely upon the intelligence, experience, honestly and impartiality of the witness. *The jury may reject it all, though it is without conflict.*" 47 Ala.App. at 733, 261 So.2d at 71. (Citations omitted). (Emphasis ours).

We conclude that the evidence presented a question for the jury.

The judgment is due to be and is hereby Affirmed.

All the Judges concur.