On September 1, 1965, appellant was indicted by the Grand Jury of Tuscaloosa County on a charge of murder in the first degree. The victim was the natural father of appellant. On September 24, 1965, appellant was ordered to Bryce Hospital for a determination by that agency of his mental *Page 196 
competency. Appellant remained in that institution until September 4, 1975, at which time he was returned to Circuit Court of Tuscaloosa County, Alabama, to stand trial under the ten-year-old indictment. Appointed counsel for the appellant and the Assistant District Attorney jointly moved the trial court to hold a hearing to determine the competency of appellant to stand trial. The trial court impanelled a jury pursuant to Title 15, Section 426, Code of Alabama, 1940, Recomp. 1958, and a hearing was held on November 17, 1975. The jury found that appellant was competent and able to assist his counsel in preparation of the defense and conduct of the trial. On January 12, 1976, appellant stood trial before a jury on the murder indictment. On arraignment appellant had entered pleas of not guilty and not guilty by reason of insanity. He was found guilty of murder in the second degree and sentenced to thirty years imprisonment as punishment for his crime. Motion for a new trial was overruled. The trial court ordered that the defendant be credited with all actual time spent incarcerated prior to trial. On April 29, 1976, appellant gave notice of appeal. The Public Defender was appointed to prosecute the appeal in forma pauperis, and a free transcript was furnished.
 TRIAL OF ISSUE OF COMPETENCY TO STAND TRIAL
After the jury was chosen to determine whether appellant was competent to stand trial, and sworn by the Clerk, a juror asked of the trial judge:
 "Would the question be important as to what the result would be of what the jury finds, not able to stand trial or able to stand, as to what would happen then?"
to which the judge responded:
 "Well, if he is able to stand trial, well, then, he will later — his trial would be set, and he will stand trial.
 "If the jury decides that his mental condition is such that he is not able to stand trial, then he would be committed to the Court; I would issue an order committing him to Bryce Hospital. It is an important matter. . . ."
Counsel for appellant made no objection or exception to the statement of the trial judge at that point. After opening statements by the prosecuting attorney and counsel for appellant and after the testimony of the first witness for the defense had been concluded, in chambers and outside the presence of the jury, the attorney for appellant moved for a mistrial. For ground of the motion, counsel insisted that appellant was prejudiced by the court's statement in informing the jury of the consequences of the verdict. The trial judge overruled the motion for a mistrial and advised counsel for appellant that the jury would be specifically instructed on the point again by the court. Appellant excepted to the ruling which denied the mistrial.
Later, in the oral charge to the Jury, the trial court instructed the jury:
 ". . . if you find that he is competent to stand trial, then at some date, he will be — His case will be set, and he will be tried. If you find that he is not competent to stand trial, the Court will have to issue an order that he be returned to the Alabama — I believe it is the Alabama Mental Hospitals, to receive further treatment until such time, and be held by them until such time that he can stand trial. So that is the importance of your decision. And the decision is yours."
Counsel for appellant duly excepted to the instruction dealing with the consequences of the jury's verdict.
We know of no authority, case or statutory, which would require that the case be reversed because the trial court instructed the jury on the effect of their verdict. The trial judge determines competency and the use of the procedure set out in Title 15, Section 426, supra, is a discretionary tool he may use to aid him in his decision. Wheeler v. State,47 Ala. App. 457, 256 So.2d 197 (1971); Duncan v. State,46 Ala. App. 732, 248 So.2d 771 (1971). Had the trial court perceived any error in the verdict of the jury on the issue of competency the verdict would undoubtedly have *Page 197 
been disregarded. The issue of the instruction on the effect of the verdict arose in trial of the appellant's competency to stand trial. It did not arise in the case-in-chief. The holding here should not be applied to a trial on the issue of guilt or innocence wherein the effect of the verdict under a plea of not guilty by reason of insanity is argued to the jury. Such would constitute improper argument. Boyle v. State, 229 Ala. 212,154 So. 575 (1934).
Appellant charges reversible error on trial of the issue of competency to stand trial in the admission into evidence of reports of the Forensic Evaluation Board of Bryce Hospital dated August 20 and September 14, 1975. These reports were admitted over objection of appellant during re-direct examination of Dr. Jerold Lower, Chairman of the Forensic Program at Bryce Hospital, a witness for the State. Dr. Lower was one of the members of the Evaluation Board. On direct examination of Dr. Lower, the prosecution elicited, without objection, that on August 20 and September 14, 1975, he and the other members of the Board were of the unanimous opinion that appellant was competent to stand trial. No reference was made to either of the written reports by the witness or the prosecutor during direct examination. Dr. Lower also testified that in his opinion the appellant was competent to stand trial at the time of the trial. Appellant argues that such reports are inadmissible as hearsay citing Benton v. State, 245 Ala. 625, 18 So.2d 428 (1944) and Ex parte Moody, 41 Ala. App. 367,132 So.2d 758 (1961). The record reflects that, on cross-examination of Dr. Lower, counsel for appellant exhibited the reports to the witness, examined the witness touching the wording of the reports and the meaning of the terms used in the reports. This was prior to introduction of the reports on re-direct examination of the witness and prior to any reference to the reports in the record. Our law is clear to the effect that when in the examination or cross-examination of a witness a party brings out a part of a transaction or conversation, the other party may inquire fully into the matter and bring out the whole of the subject matter on further examination. Palmer v.State, 168 Ala. 124, 53 So. 283 (1910); Richardson v. State,237 Ala. 11, 186 So. 580 (1938); Key v. State, 240 Ala. 1,197 So. 363 (1939); Colvin v. State, 260 Ala. 338, 70 So.2d 654
(1954); Cox v. State, 280 Ala. 318, 193 So.2d 759 (1967). No doubt, it would have been better to exclude the reports. We find its inclusion, however, to be at most harmless error. Rule 45, Alabama Rules of Appellate Procedure. Benton and Moody, supra, held it not to be error to exclude the lunacy report from evidence in the trial. Those cases do not hold it to be error to allow a jury to consider the lunacy report on trial of the issue of competency to stand trial. The holding here is fully in account with the previous ruling of this court inHolmes v. State, Ala.Cr.App. 1976, 342 So.2d 28. It should be noted that in Moore and in this case, the lunacy reports were admitted not on trial of the guilt or innocence of the defendant, but during the hearing to determine appellant's competency to stand trial. See Dannelly v. State, 47 Ala. App. 363, 254 So.2d 434 (1971); Stinson v. State, 45 Ala. App. 5,221 So.2d 397 (1968).
 TRIAL OF THE CASE-IN-CHIEF
On August 11, 1965, Prentiss Hocutt, who is appellant's son, saw appellant at the home of Prentiss between 5:30 and 6:00 P.M. Appellant had been drinking alcoholic beverages and consuming capsules which appellant said were Yellowjackets. The bottle containing the capsules was unlabeled. Appellant left the residence. About one and one-half hours later Prentiss received a telephone call after which he went to the home of his grandfather, F.D. Hocutt, Sr., the father of the appellant. He saw the body of his grandfather. He did not see appellant.
Josephine Hocutt, the eleven-year-old niece of appellant, was at her home with her younger brother and sisters. Their home was across the street from the home of F.D. Hocutt, Sr. At a time between 7:00 and 7:30 P.M. appellant knocked loudly on the door and was admitted into the *Page 198 
residence. Appellant cursed and the young girl became frightened. She asked appellant to leave. He replied that his brother and sister did not want him at home. Appellant stumbled and fell and then left the house. Later, Josephine heard a noise outside her house. She looked out a window and by porch light saw appellant being held on the ground by her uncle, F.D. Hocutt, Jr., and his wife, Margie. She went onto the porch and saw F.D. Hocutt, Sr. lying on the sidewalk across the street. She later saw appellant in an ambulance and he was bleeding about his head.
Mattie Elizabeth Woolbright, a neighbor of the deceased, was called as a witness for the State. She was in her yard when she heard a noise in the direction of the home of the deceased and walked to his yard. She looked into a bedroom window of the deceased's home and saw the appellant looking down toward the floor and stomping his feet. Appellant was saying something, but she could not understand what was being said. Mrs. Woolbright went to the home of Margie Hocutt and had a conversation with her. She then went back into her own home. From this vantage she saw appellant dragging something from the house to the sidewalk. She saw F.D. Hocutt, Jr. run up to appellant and engage him in a fight. She later saw appellant in an ambulance and heard appellant say to Margie Hocutt, "You redheaded _____, you will be next." The appellant was laughing and singing.
James Woolbright, the husband of Mattie Elizabeth Woolbright, testified that he saw appellant dragging or carrying something from deceased's house. He then saw F.D. Hocutt, Jr. holding appellant on the ground in front of deceased's house. He saw some luggage in the front yard. F.D. Hocutt, Jr. told the witness to check on F.D. Hocutt, Sr. The witness did so and found him dead.
F.D. Hocutt, Jr., the brother of appellant, was watching television at his home when Mrs. Woolbright came and talked with his wife. He called the police and started toward his father's house. He saw appellant dragging their father out onto the porch, pulling him by the hand and striking him. The witness asked appellant why he was striking their father. Appellant said, "I will just kill hell out of you," and struck at his brother. They fought and the witness held appellant on the ground until the police arrived. Margie Hocutt took a paring knife away from appellant and threw it into the garden nearby. The knife was not recovered. After the police took appellant into custody the witness examined his bloody father and found he was dead.
Rufus Strickland, the then Coroner of Tuscaloosa County, examined the body of F.D. Hocutt, Sr. at the scene. He found a stab wound in the chest which penetrated three inches, a cut on the throat, wounds about the head, and the sex organs had been cut off. He testified that the primary cause of death was a stab wound in the chest which resulted in extensive hemorrhage. The wound was consistent with a knife wound. The witness saw the mutilated private parts of the deceased inside the house.
Bobby Miller, a professional photographer, went to the scene at the behest of the Coroner. He saw the body of the deceased outside the house and photographed the interior of the house. He observed the private parts of a male on the floor of a bedroom, blood and a broken knife. There was a trail of blood from the bedroom to the porch, to the sidewalk. There was blood in the kitchen sink and bloody towels in the kitchen.
At this point the State rested its case. The appellant moved to exclude the evidence. The motion was overruled.
James Woolbright was re-called by the appellant. He testified that when he examined the body of the deceased it was wrapped in a blanket. He did not see appellant kick or strike the deceased.
Appellant also called as witnesses Eddie Clements, P.M. Bolton, Dr. James C. Thompson and Townsend Murray. The testimony of these witnesses concerned the *Page 199 
mental condition of appellant and is outlined in this opinion.
Appellant argues that the trial court erred in overruling his motion to exclude the evidence at the conclusion of the State's case and in denying his motion for new trial. The thrust of appellant's argument is that there was no direct testimony that appellant killed the deceased. Guilty agency, being a part of the corpus delicti of a crime, must be shown by substantial evidence. It may be shown by circumstantial evidence. Vernon v.State, 239 Ala. 593, 196 So. 96 (1940); Spain v. State,37 Ala. App. 311, 68 So.2d 53 (1953). In this case there was substantial evidence establishing criminal agency, that is, that the deceased died from causes which were other than accidental or natural. The trial court correctly submitted the case to the jury for determination of the guilt or innocence of appellant. Smith v. State, 54 Ala. App. 237, 307 So.2d 47
(1975).
Appellant further argues that the verdict is not sustained by the great preponderance of the evidence in that the evidence adduced on trial of the case-in-chief to the effect that appellant was insane at the time of the offense was so strong and cogent that there was no evidence from which the jury could reasonably draw an inference of sanity. On trial the appellant presented one expert and three lay witnesses who testified concerning appellant's mental condition. We agree with appellant that in exceptional cases the evidence of insanity may be so strong and uncontradicted that a verdict of acquittal should be directed. Boyle v. State, 229 Ala. 212, 154 So. 575
(1934). It should be noted that in Boyle our Supreme Court said:
 ". . . courts should be careful not to invade the province of the jury in cases of this character. Although the evidence may be offered only by the defense, and all tend to one conclusion, yet, in view of the presumption of sanity, if the evidence is inconclusive, and reasonable inferences may be drawn that the act was that of a sane man as defined by law, the affirmative charge should be refused."
229 Ala. at p. 222, 154 So. at p. 583.
The trial judge properly instructed the jury under the rule ofParsons v. State, 81 Ala. 577, 2 So. 854 (1887), including the presumption of sanity. Upon appellant's urging that the motion to exclude should have been granted and that a new trial should have been granted, we will review the evidence on the issue of insanity.
Captain Townsend Murray of the Tuscaloosa Police Department was the Desk Sergeant when appellant was brought to jail on the night of the fatal encounter. He had known appellant some four or five years prior to that time and he and appellant were friends. Appellant never gave any indication during the booking procedure that he recognized the witness and never responded to any question put to him by the witness. The appellant was "abnormal" in the opinion of the witness.
Eddie Clements, a bailiff of Circuit Court of Tuscaloosa County, a witness for appellant, had known appellant some forty years and had worked with appellant in 1930. He had not seen appellant in the time between 1930 and 1965. About two weeks after the appellant's arrest the witness went to the jail where he saw appellant. Appellant did not appear to recognize the witness and would not carry on a conversation with the witness. Appellant told the witness he did not remember him. The witness testified that in his opinion appellant was crazy. On cross-examination the witness said he had no opinion as to appellant's sanity on the night of the killing which had occurred two weeks before.
Mr. P.M. Bolton, a witness for appellant, had known appellant for thirty years before the fatality. The witness went to the jail to see appellant about two weeks after appellant was arrested. The purpose of the visit was to shave the appellant's beard which was dirty and unkept. The witness testified that appellant was "real radical", and "way out in left field" and that on the day of that visit in the jail appellant "wasn't in his right mind". On cross-examination it was brought out that the witness had not seen appellant for a period of nine *Page 200 
months preceding the time of the offense and did not see him on that day. The witness had no opinion as to the condition of appellant on that date.
Dr. James C. Thompson, a psychiatrist at Bryce Hospital, next testified for the defense. He first saw appellant in 1968. Based on his personal observation of appellant, and the Hospital records prepared by other staff members at the institution beginning December 2, 1965, the witness was of the opinion that at the time his father was killed appellant did not know what he was doing or did not realize the consequences of what he was doing if he did kill his father. Dr. Thompson was of the opinion that appellant was suffering from paranoid schizophrenia.
Where there is a conflict in the evidence on the issue of insanity at the time of a homicide that issue should be presented to the jury under proper instructions. Such evidence should be weighed by the jury along with all the other evidence in the case. Cunningham v. State, 47 Ala. App. 730, 261 So.2d 69
(1972). The affirmative charge is properly refused under such circumstances. This Court has held that the opinions of expert witnesses as to insanity are not conclusive and, even though it is without conflict, the jury may reject it all. Smith v.State, 54 Ala. App. 237, 307 So.2d 47 (1975); Burgess v. State, Ala.Cr.App., 339 So.2d 121 (1976). The issue of insanity was properly submitted to the jury and the Court did not err in refusing to exclude the evidence or in denying the motion for new trial in this regard.
Appellant complains of error in the refusal of Charges 1 and 6 requested in writing. Analyzing the charges refused in the light of those given both in writing and in the Oral Charge, we conclude that the jury was fairly and adequately charged on the defense of insanity under our law.
We have considered the entire record under Code 1940, Title 15, Sec. 389, including all rulings and actions which might be construed as being adverse to appellant. From this examination, we conclude that error is not made to appear.
The foregoing opinion was prepared by Hon. William D. Page, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Sec. 38, Title 13, Code of Alabama, 1940, Recomp. 1958; the Court has adopted his opinion as its own.
AFFIRMED.
All the Judges concur.