BOWEN, Presiding Judge.
Charles E. Green was indicted for murder, convicted of manslaughter, and sentenced to ten years in the penitentiary for killing Alexis Marie Baldwin. On appeal, Green argues that his motion for judgment of acquittal was due to be granted because the State did not prove a prima facie case of homicide.
The State’s evidence established that Alexis Marie Baldwin was the thirteen-month-old daughter of Irma McDuffie, a woman with whom the defendant had been living for several months prior to the infant’s death. Green and McDuffie resided in the Travelers Motor Inn in Dothan with Ms. McDuffie’s two children, Alexis and three-year-old Shannon. Green took care of the children while Ms. McDuffie was at work.
The manager of the Travelers Motor Inn and his wife testified that, during the time the defendant was with the children, they had observed him “smack” the baby on the *318 side of her head, kick her, and shake her by the hair. They also saw him throw the infant into the motel swimming pool, allow her to sink to the bottom, and when she bobbed up, spank her for crying. The defendant was also observed “shaking” and “slinging” the baby.
On August 19, 1983, after Mrs. Joann Carter, the co-manager of the motel, watched the defendant shake the child and sling her up in the air outside, she waited until he returned to his room and telephoned him to see if anything was wrong. The defendant told her that the baby had fallen off the bed and he “couldn’t get it to do anything.” Mrs. Carter went to the defendant’s room where she saw the infant, gasping for breath, with a knot on the side of her head. Mrs. Carter opened the baby’s eyelids and saw her eyes “roll back”. She told the defendant to call the paramedics because the child needed to be “seen about as soon as possible.” The defendant replied that he had to pick up Ms. McDuffie, the child’s mother, at work, whereupon he left Alexis with her three-year-old sister and got in his car.
When the defendant returned with the child’s mother, the two of them took Alexis to the Dothan Medical Center Emergency Room where she was seen initially by Nurse Ferrie White. Mrs. White testified that when the child was first brought in she had no pulse or respiration, and was covered with bruises “on its right thigh ... its left forearm, both ears, the right temple. When I turned it over, its buttocks were just a complete bruise. Bruise on both backs of the legs, the lumbar region, the thoracic region, on the back of the neck_” Mrs. White stated that the baby’s heartbeat was restored, but her breathing was accomplished by means of a ventilator. The infant remained on life support systems, with a flat EEG indicating no brain activity, until two days later when her vital organs were removed following the mother’s consent to donate the heart, liver and kidneys for transplant purposes. The baby was pronounced dead two days earlier when brain activity ceased.
Dr. William Lies, the child’s pediatrician, testified that he was called in shortly after the baby arrived at the emergency room. In his opinion, the infant had incurred the bruises during a one to four day period prior to her death. The actual cause of death, he testified, was “swelling of the brain tissue and brain cells. By producing so much pressure inside the head, it stopped the function of the vital cells that control life.” Dr. Lies stated that he believed the swelling to have been caused by trauma of some kind such as “shaking or slinging”. He said bruises such as Alexis had could not have been caused by a fall but, instead, indicated a pattern of “repetitive abuse”.
Officer Nick Monday of the Dothan Police Department talked with the defendant at the Medical Center, where the defendant stated that the baby had fallen out of bed and that he left her to pick up Ms. McDuf-fie after the co-manager of the motel, Mrs. Carter, said that “the child looked okay to her.” The defendant then added, “[W]ell, it really all started last night” when the infant had eaten some of his cigarettes while he was taking a shower. The defendant told Officer Monday that, after he found the child with the cigarettes, he spanked her with a belt.
Green took the stand and denied shaking, slinging, kicking or otherwise harming the baby but claimed that she was prone to falling or had been hurt by her three-year-old sister.
In our judgment, there is no question that the State presented a prima facie case of homicide. The prosecution’s evidence established that the defendant, who had been observed mistreating the child, had the baby in his keeping during the period in which the bruises, according to expert testimony, were inflicted. See Phelps v. State, 439 So.2d 727 (Ala.Cr.App.1983); Smith v. State, 54 Ala.App. 237, 307 So.2d 47 (1975). In addition, the defendant failed to summon the paramedics when advised to do so, see Layne v. State, 54 Ala.App. 529, 310 So.2d 249 (1975), and gave a false account of his conversation with Mrs. Carter to the *319 Dothan police. See Cronnon v. State, 56 Ala.App. 192, 203, 320 So.2d 697 (1975), cert. denied, 294 Ala. 756, 320 So.2d 709, cert. denied, 423 U.S. 1077, 96 S.Ct. 864, 47 L.Ed.2d 88 (1976).
Under the circumstances, the question of defendant’s guilt was for the jury, and the motion for judgment of acquittal was properly denied. Dolvin v. State, 391 So.2d 133 (Ala.1980); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.