Jessie Lee Tucker was convicted by a Baldwin County jury of violation of the Alabama Uniform Controlled Substances Act, Code 1975, § 20-2-1, et seq., for the *Page 135 
sale of marijuana. The conviction was affirmed by the Court of Criminal Appeals, 474 So.2d 131. This Court granted Tucker's petition for writ of certiorari. Tucker raises three evidentiary issues for our review.
Tucker allegedly sold some marijuana on July 6, 1982, to Lance Monley, a Baldwin County Deputy Sheriff working undercover at that time. Tucker contends that he did not sell any marijuana to Monley and that the first time he saw Monley was on September 30, 1982, the day of his arrest. A search of Tucker's residence at the time of his arrest produced a small amount of marijuana. No charges were ever brought based upon that search.
The search was first mentioned by Tucker on direct examination in the following manner:
 "Q. Did you see Mr. Monley that day [the day of the arrest]?
 "A. They took me to my house to search my house — (interrupted)
"Q. No, sir, did you see Mr. Monley that day?
"A. The day I was arrested?
"Q. Yes.
"A. Yes, sir."
Tucker asserts that the trial court erred in permitting the prosecution to cross-examine him as follows:
 "Q. Mr. Tucker, I would like to get several things clear in my mind that you said.
 "Mr. Gibson asked you a question about when you first saw Lance Monley and you answered, `When he came to my house to search.' Can you tell me more about that? Why was your house searched?
 "A. Well, when they arrested me on September 30th, they picked me up from where I work, they picked me up there. They had a search warrant and they took me to my house to search my house.
"Q. They had a warrant?
"A. Yes.
"Q. Do you know if anything was found?
 "MR. GIBSON: Excuse me, Your Honor, we respectfully object to that. There has been no charge or proffer made or testimony with respect to any search at this Defendant's home.
 "THE COURT: He's on the stand with cross-examination. I am going to overrule it."
On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried. Sparks v. State, 376 So.2d 834
(Ala.Crim.App. 1979); Hinton v. State, 280 Ala. 48, 189 So.2d 849
(1966).
This exclusionary rule notwithstanding, when one party brings out part of a transaction or conversation, the other party may inquire further into the matter or bring out the whole subject for further examination. Logan v. State, 291 Ala. 497,282 So.2d 898 (1973); Hocutt v. State, 344 So.2d 194 (Ala.Crim.App. 1977). This proposition of law, also known as the "rule of completeness," 7 Wigmore, Evidence §§ 2094-2125 (3d ed. 1940), serves the purpose of allowing a party to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary. See generally 22A C.J.S. Criminal Law § 660 (1961) and the cases cited therein.
The question asked Tucker on direct examination did not concern the search of his house or what was found. The answer was obviously unresponsive. Once the search was mentioned, Tucker's attorney interrupted him and asked the question again. Due to the unresponsiveness of the answer, the immediate interruption of the testimony by the attorney, and the fact *Page 136 
that no adverse inferences arose from the mentioning of the search as to the prosecutor's position, Tucker did not open the door so that the prosecutor could question Tucker about what was found during the search. See generally State v. Davis,351 So.2d 771 (La. 1977).
Because Tucker's unresponsive answer did not present grounds for overcoming the rule against admitting evidence of another crime, the trial court abused its discretion in overruling Tucker's objection to the prosecutor's question as to what was found during the September 30 search of Tucker's residence.
We shall mention one of the remaining issues because of the likelihood of recurrence.
The trial court sustained the prosecutor's objections to questions posed the State's toxicologist on cross examination as to whether or not she had ever taken a leave of absence for a nervous breakdown. The credibility of a witness may be attacked by showing mental incapacity, but only if the incapacity exists at the time the witness testifies, or existed at the time of his observation of the incident about which he testifies. Stewart v.State, 398 So.2d 369 (Ala.Crim.App. 1981), cert. denied,398 So.2d 376 (Ala. 1981). We are unable to review this issue because of the lack of an offer of proof as to when the alleged nervous breakdown occurred.
The judgment is hereby reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.