DeCARLO, Judge.
Robbery; ten years imprisonment.
Prince was indicted for the kidnapping, rape, and robbery of a young Mobile woman. All three charges arose from a series of events occurring in the early morning hours of April 11, 1981.
The victim was accosted by a young black man as she unlocked her car in the parking lot of her apartment complex around 3:00 o’clock on the morning of April 11, 1981. The man shoved her into the car and then followed her in. He told the victim not to “try anything” because he had a gun. She could not escape through the door on the passenger’s side of her automobile because that door was broken and could not be opened from the inside.
The man drove to a side alley next to Murphy High School in Mobile. When he stopped the car, the victim attempted to escape by rolling down her window and opening the right front door from the outside. As she. exited, however, her abductor lunged after her and grabbed her with both hands around her throat. She was able to pull him out of the car on that side, where they wrestled in the grass, and dirt, and on the asphalt, until he eventually overpowered her. He hit her several times and threw her down on the pavement. Her head hit so hard on the pavement that her vision became blurred. In this condition and in the midst of continuing threats, the victim was raped twice by her attacker.
After the attack, the victim escaped. She attempted to take her purse but her attacker grabbed it, removed the seventy dollars from her wallet and threw the purse on the back seat. The victim fled and hid in some bushes nearby until her assailant had driven away in her automobile.
The victim then walked several blocks and flagged down a police car. She gave the officers a description of her assailant, down to his undershorts, and a description of her automobile. The police officers immediately broadcast these descriptions on their police radio.
Within minutes another police officer on routine patrol spotted the victim’s automobile. When he pulled in behind it, the driver, a young black man fitting the victim’s description of her attacker, speeded up in an effort to elude the police officer. After a short high speed chase, the victim’s automobile “spun out” at a turn and hit a tree. The officer giving chase was no more than twenty feet away when the driver exited the wrecked vehicle and fled on foot. The officer pursued this man, first in his police car and eventually on foot. He lost sight of the suspect for a few moments but then spotted him inside a well lighted room of a residence. The suspect had crawled in the home through an open window.
This suspect, later identified as the appellant, Chris Prince, was apprehended • and transported back to the scene of the victim’s wrecked automobile. The victim was seated in the front seat of a police car, the *567 headlights of which were pointed directly at the vehicle in which the appellant was sitting, and she identified the appellant as her abductor. She was unequivocal even though her vision was admittedly blurred and the lighting conditions were not excellent. (It was “daybreak” when she made this positive identification.)
The appellant was first tried for rape in case number CC-81-1578. During that trial the victim related the details of the horrible attack upon her and positively identified the appellant in court as the perpetrator of the attack. The police officer who apprehended the appellant likewise positively identified the appellant in court as the man he saw exiting the victim’s automobile, the same man that he pursued and eventually arrested.
The State’s evidence showed that the appellant was wearing a black shirt, blue jeans, and red undershorts (“jogging shorts”) which exactly matched the description the victim had given the police after her attack but before appellant’s arrest. The evidence revealed that the appellant’s black shirt had grass stains on one shoulder and that his socks were soiled with mud. The red jogging shorts were soiled with semen and with blood which matched the victim’s type. (The victim had experienced some vaginal bleeding during the rape incidents.) The bloodstains on the appellant’s jogging shorts (and on a pair of red jockey shorts which appellant was wearing underneath the jogging shorts) were in the crotch areas.
Appellant’s sole defense was an alibi and he was the only defense witness. He testified that he had spent six to eight hours on the night of April 10 and the morning of April 11 at a bar in Touminville. He spent most of that time dancing. He had nothing to drink but did smoke one “joint.” He was walking home between 4:00 A.M. and 5:00 A.M. when he noticed a police ear “trying to run him down.” He ran to a friend’s home and crawled in a window where he was soon apprehended by the police.
Appellant explained that he was scared of the police and always ran when they approached him. He explained that he was a hardworking laborer and must have acquired the grass stain on his shirt and the soiled socks at work. He explained that he had worn his red undershorts for about a week prior to April 11 and that he had had sexual intercourse with a girlfriend earlier that week. He did not know where the blood on his undershorts came from. He did not know his blood type. He did not know whether or not the girl he had had intercourse with was at that time “in her period.”
Appellant, in summation, essentially conceded that the victim had been kidnapped, raped and robbed. His sole contention was that he was not the perpetrator of these crimes. He contended that the victim’s blurred vision, and the bad lighting conditions led to her mis-identification.
Although the evidence seems overwhelmingly against the appellant, the jury returned a general verdict of not guilty. Since the appellant conceded that the victim had been raped, the only issue left for the jury, an issue which the jury decided in appellant’s favor, was the validity of appellant’s identification. In other words, the jury found that the appellant was not the man who raped the victim.
After being acquitted in the rape case, appellant was tried on the robbery charge stemming from this same series of events. The robbery trial disclosed to the jury evidence nearly identical to that disclosed during the rape trial. This second jury found appellant guilty.
I
At the beginning of the robbery trial the appellant submitted to the trial court a “Motion to Dismiss (PLEA OF AUTRE-FOIS ACQUIT)” on the grounds that the only controverted issue would be appellant’s identification and that this issue had already been decided in his favor in the first trial. The trial court denied the motion. It is this denial that appellant cites as the sole error in this appeal.
*568 The foundation of appellant’s argument, here, is “collateral estoppel.” A child of civil law, this principle was adopted by federal criminal law at least as early as United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court held that “collateral estoppel” is embodied in the Fifth Amendment guarantee against double jeopardy and is applicable to the states through the Fourteenth Amendment. In substance, the court defined “collateral estoppel” as the bar preventing relit-igation of a specific issue of ultimate fact when that issue has already been determined between the same parties by a valid and final judgment.
The defendant in Ashe was accused of being one of three or four men who robbed several poker players during a friendly game. He was tried and acquitted for the robbery of one of the poker players. The sole contested issue was identification and the jury found that the defendant was not sufficiently identified as one of the robbers. That specific issue of ultimate fact, i.e. the identification of the defendant, was, therefore, conclusively and finally litigated in the defendant’s favor. The court ruled that his timely plea of former jeopardy founded on “collateral estoppel,” and asserted at a subsequent trial for the robbery of another of the poker players, should have been a bar to the second trial.
The court recognized the difficulty of determining whether or not a particular “issue of ultimate fact” has conclusively been litigated, and, therefore, set forth the requirement that reviewing courts examine the records of the prior proceedings. The court found in Ashe that the only rationally conceivable issue in dispute at defendant’s first trial was his identity as one of the robbers, and that this issue was conclusively determined by the jury’s not guilty verdict. See also Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971) and Turner v. Arkansas, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972).
The appellant in this case conceded at both trials that the victim had been kidnapped, raped, and robbed. Therefore, “identity” was the only controverted issue. Not only does it defy comprehension, but it is beyond our wildest imagination how any jury could have found this man not guilty in light of the overwhelming evidence presented against him. Nevertheless, the verdict of acquittal in the rape case was conclusive on the identity issue.
We recognize that we are bound by the decision of the United States Supreme Court; however, serious reservations permeate our view of the Ashe decision. Be that as it may, we have absolutely no alternative under Ashe, not only to reverse this case, we are also compelled to render it.
REVERSED AND RENDERED.
All the Judges concur.