[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1175 
Betty Morris was indicted and convicted for embezzling $450 from the Evergreen High School Lunchroom Account in violation of Alabama Code (1975), § 13-3-20. Sentence was two years' imprisonment. Three issues are raised on appeal.
 I
Morris contends her trial placed her in double jeopardy and violated her constitutional right of due process because "the evidence presented against her had already been considered by a prior jury in a different indictment in which the Appellant was found not guilty." Morris argues that "the State, by offering this evidence in the original trial in an effort to convict the Appellant, waived [under the doctrine of collateral estoppel] any further right to prosecute with the same evidence."
This appeal stems from the conviction wherein Morris was charged with the offense of embezzlement of Evergreen High School Lunchroom Account check number 196, for $450, dated August 17, 1979, and made payable to Betty Morris.
Morris had been previously tried and acquitted on an indictment charging her with the embezzlement of Colonial Baking Company check number 6160, for $472.08, dated August 10, 1979, and made payable to Evergreen High School. In her pretrial motions raising the defenses of double jeopardy and collateral estoppel, Morris alleged that the State introduced evidence of the $450 check in her trial for the $472.08 check, that her second trial would be based on the same evidence as her first, and that since one jury had already considered the evidence and found her not guilty, further prosecution was barred.
In the trial for the $450 check it was stipulated that three exhibits "were introduced into evidence in a previous trial in which Mrs. Morris' employer was the same as in the instant trial, and in which the defendant was acquitted of embezzlement, as tending to negate inadvertence and as tending to show criminal intent in the previous trial." The three exhibits were the check for $450 (the basis for the conviction and this appeal), the lunchroom ledger sheet, and Evergreen High School Lunchroom Account check 195 for $400 dated August 7, 1979, and payable to Betty Morris. The check for $472.08, which Morris was acquitted of embezzling, was not introduced in her second trial. *Page 1176 
The Double Jeopardy Clause of the constitution protects an accused from being twice put in jeopardy for the same offense.Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707
(1969). Since Morris has been prosecuted for separate offenses, the Double Jeopardy Clause of the Fifth Amendment does not bar the second prosecution. Blockburger v. United States,284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
However, the Double Jeopardy Clause incorporates the doctrine of collateral estoppel, which may bar a retrial even if the crimes are not the same. Ashe v. Swenson, 397 U.S. 436,90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Annot., 9 A.L.R.3d 203 (1966). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any further lawsuit." Ashe, 397 U.S. at 443,90 S.Ct. at 1194; Prince v. State, 431 So.2d 565, 568 (Ala.Cr.App. 1982), cert. denied, 431 So.2d 568 (Ala. 1983). Thus, even when different offenses are charged, and the Double Jeopardy Clause therefore would not normally bar a second prosecution, collateral estoppel may bar the second trial when a fact previously found in the defendant's favor is necessary to the second conviction. Ashe, 397 U.S. at 446, 90 S.Ct. at 1195. Collateral estoppel may also bar the reintroduction of evidence used against a defendant in a prior prosecution when the State is attempting to use the evidence to prove a fact previously found against it. United States v. Johnson, 697 F.2d 735, 740
(6th Cir. 1983); United States v. Head, 697 F.2d 1200, 1207-08
(4th Cir. 1982), cert. denied, 462 U.S. 1132, 103 S.Ct. 3113,77 L.Ed.2d 1367 (1983). "(T)he rule is well settled that the doctrine of collateral estoppel, as applied in criminal prosecutions, precludes the relitigation of issues determined by a former verdict and judgment, that is those issues actually decided and those necessarily involved in the result." 9 A.L.R.3d § 7 (a). "Ashe, however, does not prohibit the admission of the same evidence at the second trial, but only prohibits the relitigation of the issues conclusively decided in defendant's favor in the first prosecution." United Statesv. Woodward, 482 F. Supp. 953, 956 (W.D.Pa. 1979). "Evidence introduced in the trial leading to acquittal can be reintroduced in a second trial provided the court finds the fact `which defendant sought to bar was not previously determined in defendant's favor by the acquittal verdict.'"United States v. Hill, 550 F. Supp. 983, 987 (E.D.Pa. 1982). See also Oliphant v. Koehler, 594 F.2d 547 (6th Cir.), cert. denied, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979).
When a previous judgment of acquittal was based upon a general verdict, the rule of collateral estoppel "requires a court to `examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury would have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" Ashe,397 U.S. at 444, 90 S.Ct. at 1194. "When a claim is made that collateral estoppel prevents certain evidence from being admitted at trial, a court must determine what the first judgment decided and then must analyze how that determination bears on the second case. See United States v. Mespoulede,597 F.2d 329 (2d Cir. 1979)." Sabin v. Israel, 554 F. Supp. 390, 391
(E.D.Wis. 1983). See also United States v. Webbe, 558 F. Supp. 55,56 (D.Nev. 1983). "The burden, however, is on the defendant in the second case to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict." UnitedStates v. Cala, 521 F.2d 605, 608 (2d Cir. 1975).
Although defense counsel requested an evidentiary hearing on this issue, the record does not reflect whether he received one. There is no allegation that a hearing was denied. The trial judge's ruling was made at trial: "Mr. Harden [defense counsel], I told you I would give you a continuing exception for collateral estoppel, jeopardy, Fifth Amendment, Fourteenth *Page 1177 
Amendment, or whatever else you want to raise."
Morris has not demonstrated that the trial judge's adverse ruling constitutes error. "Because the jury in [the first] trial handed down a general verdict of acquittal and no transcript of the proceedings was made, we cannot determine what issues were necessarily determined in that trial. Absent a record so showing, we do not find collateral estoppel applicable here. See Basista v. Weir, 340 F.2d 74 (3d Cir. 1965)." State v. Clark, 646 S.W.2d 409, 410 (Mo.App. 1983).
The principles of collateral estoppel do not bar the introduction of evidence which has already been introduced in a previous prosecution of the same defendant in which he has been acquitted, where it cannot be determined that the jury in the prior prosecution relied on the evidence in question in acquitting the defendant. United States v. King, 563 F.2d 559
(2d Cir. 1977).
 "In United States v. Cala, 521 F.2d 605, 608 (2d Cir. 1975), we held that the defendant has the burden of establishing that the issue which he seeks to foreclose from consideration was `necessarily' determined in his favor in a prior prosecution. When the prior proceeding was a jury trial, the burden is a heavy one, since `it usually cannot be determined with any certainty upon what basis the previous jury reached its general verdict', United States v. Gugliario, 501 F.2d 68, 70 (2d Cir. 1974); United States v. Seijo, 537 F.2d 694, 697 (2d Cir. 1976), cert. denied, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977)." King, 563 F.2d at 561.
Here, unlike Johnson, 697 F.2d at 740-41, where the appellate court remanded the cause so that the record could be "augmented" with a transcript of the first trial, no attempt has been made to obtain a record of Morris' first trial and there has been no allegation that the trial judge lacked a sufficient basis to make the collateral estoppel analysis. Morris has done nothing more than prove that some of the same evidence was introduced in both cases. "The party claiming estoppel must make some attempt to define precisely the factual issue necessarily decided in the prior trial." United States v.Kalish, 690 F.2d 1144, 1144, 1155 (5th Cir. 1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).
In short, Morris has simply failed to carry her burden of proof on this issue. "Since a plea of former jeopardy sets up affirmative matter . . ., the burden of proving this issue, from the start, is on the defendant. . . ." 30 Am.Jur.2dEvidence § 1160 (1967). The offense involved in each prosecution was a separate and distinct instance of embezzlement, and "double jeopardy is not violated merely because the same evidence is relevant to show both crimes."State v. Cumber, 32 N.C. App. 329, 232 S.E.2d 291, 297, cert. denied, 292 N.C. 642, 235 S.E.2d 63 (1977). See also Lynch v.Henderson, 469 F.2d 1081 (5th Cir. 1972).
Moreover, from the record before this Court, the acquittal of embezzling the Colonial Baking Company check did not necessarily involve a finding of Morris' innocence in embezzling the Evergreen High School Lunchroom Account check, even though the lunchroom account check was introduced in evidence in the first trial to show intent and negate mistake. Embezzlement of the lunchroom account check was not a fact necessarily determined against the State at the first trial. The offenses are separate in law and in fact. Douthit v.Estelle, 540 F.2d 800, 805 (5th Cir. 1976). The jury could have acquitted Morris of embezzling the Colonial Baking Company check (payable to Evergreen High School) even if it believed that she was guilty of embezzling the Evergreen High School Lunchroom Account check (payable to Morris). It is entirely possible that Morris had the requisite intent on one occasion and not on another. United States v. Griggs, 651 F.2d 396, 400
(5th Cir. 1981). The conviction involving the $450 check does not contradict the former determination acquitting Morris of *Page 1178 
embezzling the $472.08 check. See 9 A.L.R.3d at § 7 (e); Mikellv. State, 242 Ala. 298, 301, 5 So.2d 825 (1942).
"Having in mind that it is a rare case where a defendant can sustain his burden of establishing that the prior jury necessarily decided an essential issue in his favor, see UnitedStates v. Gugliaro [501 F.2d 68, 70 (2d Cir. 1974)], we are satisfied that the burden was not met here." United States v.Cala, 521 F.2d 605, 609 (2d Cir. 1975).
 II
Another argument for reversal is that the trial judge unreasonably restricted Morris' right to cross examination of State's witness Wayne Pope.
Mr. Pope was the Conecuh County Superintendent of Education. John Floyd was the principal of Evergreen High School, where the defendant was employed as a bookkeeper. The $450 check to the defendant was dated August 17, 1979. On November 18, 1979, a fire had damaged "part of the reception area and the entire bookkeeper's office and perhaps part of the principal's office", although the defendant's office was the only office completely destroyed by fire.
On cross examination of Superintendent, Pope, defense counsel attempted to question him about why John Floyd left the school as principal in 1981, "about a fire that happened at John Floyd's house two months after" the fire at the school, and "about a fire that happened at . . . [Pope's] sister's house right after she worked there [at the school]." The trial judge sustained the prosecutor's objections and held that "whoever might have had a fire doesn't have a thing in the world to do with this case." Defense counsel requested to make an offer of proof and the trial judge responded: "I'm going to sustain the objection and I'll let you make an offer of proof at the proper time outside the presence of the jury, I'll let you make an offer of proof of anything that you think ought to come in and I'll rule on it at that time." However, defense counsel never did attempt to make an offer of proof outside the presence of the jury.
Later, during his cross examination of Pope, defense counsel also attempted to question Pope as to whether or not Mr. Floyd paid any money back to the school system.
We find that the defendant's right of cross examination was not improperly restricted. Here, the trial judge gave defense counsel the opportunity to make an offer of proof outside the jury's presence — a practice approved in Ex parte Fields,382 So.2d 598 (Ala. 1980). Where the relevancy is not apparent in the question itself, the trial court will not be put in error for sustaining an objection unless the relevancy is made to appear. Alberson v. State, 254 Ala. 87, 91, 47 So.2d 182
(1950). "When error is predicated upon an exception to the ruling of the trial court in sustaining an opposing party's objection to questions propounded to a witness, error cannot be incurred, unless the trial court was made aware of what testimony the question was expected to elicit and unless it further appears that it was material to the issues in the case." Chesson v. State, 435 So.2d 177, 179 (Ala.Cr.App. 1983);Coburn v. State, 424 So.2d 665 (Ala.Cr.App. 1982). "When a question is so general that an answer cannot be said to be prima facie admissible, the party is required to inform the court what is proposed to be proved, so that the court may see whether the evidence sought to be elicited is proper." Williamsv. State, 245 Ala. 32, 34, 15 So.2d 572 (1943). "It is the duty of counsel to make it known to the trial judge that the evidence he seeks to introduce is material, if the form of the questions does not indicate materiality." Patterson v. State,37 Ala. App. 161, 162, 66 So.2d 191, cert. denied, 259 Ala. 152,66 So.2d 194 (1953).
 III
Morris contends that the trial court was "too vigorous and forceful in its charge and instructions to a deadlocked jury" and *Page 1179 
that the "Allen" charge did, in fact, coerce a verdict.
A jury was selected and the trial started on Tuesday, September 28, 1982. The jury began its deliberations at 10:00 on the morning of September 29th. Sometime "before dinner" the jury notified the trial judge that it was deadlocked. The judge did not mention this note. At 1:30 that afternoon the jury again notified the judge that it was still deadlocked. At that time, the judge answered questions concerning the charge and the elements of the offense and instructed the jury to continue deliberating: "The question as to how long you can deliberate is left to the Court and in my opinion you haven't deliberated long enough in this case. I want you to have abundant time to deliberate." There were no objections or exceptions taken to these instructions.
At 3:35 that Wednesday afternoon, the jury, for the third time, informed the judge that it could not agree. The judge then stated: "I don't want to come across in the wrong way but you need to get down to business in this thing because I'm not about to declare a mistrial in this case today." When the "hold-up" juror indicated that he would not change his opinion even if the deliberations continued until 5:00 P.M., the trial judge responded: "We're not talking about 5:00 o'clock this afternoon. I mean 5:00 o'clock Friday afternoon because I mean business about this thing."
At 5:43 that afternoon, the trial judge offered the jury the choice of continuing to deliberate after supper or of recessing for the night. The judge instructed the jury, in part, as follows:
 "Let me say this to the jury: I think that after you go home and have your night meal and get a good night's sleep and breakfast in the morning, you will return here refreshed and hopefully in a position to sit down and discuss this matter and give credit to one another's opinion. I would never tell any juror that they should sacrifice any principle which they feel that they are bound to but on the other hand, sometimes we get on a principle one way or the other and we discover after looking at it different ways that perhaps we might not have been right in the position we took. I say simply to you that I want to, at this time, let you go home. . . . These are grave matters and they deserve, I think, a decision with all deliberate speed. That's a relative term and I want to let you have an abundant time within which to further deliberate the affairs of this case."
The jury chose to recess and to return the next morning at 9:00. Defense counsel then requested a mistrial because the jury was deadlocked. The judge denied the motion and informed counsel that the jury "in my opinion, they haven't deliberated long enough and I say further, they haven't deliberated yet half as long as they may have to deliberate. I'm going to get a verdict in this case." The jurors were not sequestered and were allowed to go their "separate ways" for the night.
At 9:23 on the morning of September 30th, the jury returned a written verdict of guilty as charged. However, upon polling the jury, one of the jurors indicated that it was not his verdict. The trial judge instructed the jury to continue deliberating until 5:00 that afternoon: "I think you need to continue your deliberations. As I told you earlier, I will be back here at 5:00 o'clock this afternoon. I have a meeting that I have to attend but I will be back here by 5:00 o'clock." Defense counsel requested a mistrial, characterizing Judge Key's statement as coercive. At 11:20 that morning, the jury reached a unanimous verdict of guilty.
The trial court's practice of admonishing deadlocked juries to make a further effort to reach a verdict was approved inAllen v. United States, 164 U.S. 492, 17 S.Ct. 154,41 L.Ed. 528 (1896). "It is quite clear that under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used." Showers v. State,407 So.2d 169, *Page 1180 
171 (Ala. 1981). A judge may not pressure the jurors in any way to relinquish individual conclusions reached on the basis of the evidence and law presented at trial. Jenkins v. UnitedStates, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957
(1965).
Here, the trial judge gave only a modified Allen charge, which we do not find coercive. The judge did not threaten or coerce the jurors to set aside scruples to arrive at a verdict.United States v. Anderton, 679 F.2d 1199, 1203-04 (5th Cir. 1982). He never made any attempt to determine the numerical division of votes. Brasfield v. United States, 272 U.S. 448,47 S.Ct. 135, 71 L.Ed. 345 (1926). The judge merely reminded the jurors to listen to each other and that this might be easier to do after having had some rest. United States v. Young,702 F.2d 133, 136 (8th Cir. 1983). After the judge's final comment, the jury deliberated for approximately two hours before reaching a verdict.
The judge did not call the jury's attention to the time and expense that a new trial would entail and did not censure jurors for not agreeing with the majority. His statement that he would return at 5:00 that afternoon, when read in the context of the whole charge, Evans v. State, 338 So.2d 1033,1040 (Ala.Cr.App. 1976), cert. denied, Ex parte Evans,348 So.2d 784 (Ala. 1977), was not coercive, Allred v. State,390 So.2d 1109 (Ala.Cr.App.), cert. denied, Ex parte Allred,390 So.2d 1114 (Ala. 1980), although we well recognize that it certainly could have been if coupled with other remarks indicating that the judge expected a verdict. Under the circumstances of this case, we do not view the judge's action and statement as a threat. Hooks v. State, 45 Ala. App. 221,224, 228 So.2d 833 (1969) (trial judge's remark that if jury thought it could finish case that night, court would wait or it could put jury up for the night was not coercive).
Our review of the record convinces us that the judgment of the circuit court is due to be affirmed.
AFFIRMED.
All Judges concur.