TAYLOR, Presiding Judge.
The appellant, Derrick McTerry, was convicted of assault in the first degree, a violation of § 13A-6-20. He was sentenced to 20 years in the penitentiary.
The state’s ease rested solely on the testimony of Ronald Jelks, the 19-year-old victim. Jelks testified that on March 10, 1993, the appellant shot him in the neck as Jelks was riding a bicycle in Birmingham. Jelks stated that he and a friend, Greg Williams, had been drinking beer at Williams’s house when they decided to bicycle to a local convenience store to buy more beer. After leaving the store, Jelks saw the appellant standing in an alley between two houses. Jelks testified that the appellant ran towards him and Williams and that he fired a shot when he was about 10 feet away from Jelks. The bullet struck Jelks in the neck, paralyzing him from the neck down. Jelks stated that the shooting occurred around 8:00 p.m. and that, although it was dark, he saw the appellant clearly because of a nearby street light. Jelks further stated that he had known the appellant for eight years, that he and the appellant did not get along, and that in the past the appellant had threatened to shoot him.
The appellant denied shooting Jelks and testified that he was at the house of Danielle Richardson on the day of the shooting from noon until around 10:00 p.m. He denied that there was “bad blood” between him and Jelks, and he could offer no reason why Jelks would accuse him of the shooting. Richardson corroborated Jelks’s testimony, but admitted that her house was only a few blocks away from where the shooting occurred.
I
The appellant contends that the trial court erred in denying his motion for an “instanter” subpoena to secure the presence of Greg Williams, the only other witness to the shooting. Williams was subpoenaed by the state and reported to court the day of the trial. However, the state excused Williams shortly before the trial began.
The state explained that it excused Williams because his testimony was “neutral,” in that he was unable to identify the shooter. The appellant stated that he did not subpoena Williams because 1) Williams had already been subpoenaed by the state, and he assumed Williams would be at trial if needed, and 2) he did not anticipate that there would be any conflict between Williams’s and Jelks’s testimony. At the preliminary hearing, Williams had testified that he was unable to identify the shooter because the events surrounding the shooting happened so quickly.
The appellant requested a subpoena after Jelks testified at trial that the person who shot him was on foot. Williams had testified at the preliminary hearing that the shooter was riding a bicycle. The appellant contended that he had no way of knowing before trial that the testimony of Jelks and Williams conflicted in this respect.[1] The trial court refused to issue the subpoena, stating that the appellant should have subpoenaed Williams as a witness for the defense because *955 it appeared that Williams’s testimony may have been favorable to the appellant.
The only evidence connecting the appellant with the crime was the eyewitness testimony of Jelks. The appellant denied that he was the shooter. The jury had to base its decision on which witness it found to be more credible — the appellant or Jelks.
The Sixth Amendment to the United States Constitution states:
“In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.”
(Emphasis added.) An accused’s right to compulsory process is also found in Article I, § 6, Constitution of Alabama of 1901, which states, in pertinent part “[t]hat in all criminal prosecutions, the accused has a right ... to have compulsory process for obtaining witnesses in his favor.”
In Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the United States Supreme Court explained the innate relationship between compulsory process and the accused’s right to a fair trial.
“The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant’s version of the facts as well as the prosecution’s to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution’s witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process law.”
388 U.S. at 19, 87 S.Ct. at 1923. (Emphasis added.)
A corollary to the accused’s right to compulsory process is the court’s obligation to ensure that that right is not violated for procedurally pretextual reasons. See Thomas v. State, 15 Ala.App. 408, 409, 73 So. 558 (1916) (compulsory process “is a substantive right, a real right, and not an illusory sham to be satisfied by the issue of process, which is to be rendered ineffectual by hastening on to immediate trial”), and Walker v. State, 117 Ala. 85, 88, 23 So. 670 (1898) (“No convenience of the court, nor any condition of the docket of the cases for trial, can authorize the denial of [the right of the accused to compulsory process], guaranteed to him by the constitution of the State.”).
. The mandatory and comprehensive nature of the court’s obligation to the accused was illustrated in Ervin v. State, 584 So.2d 947 (Ala.Cr.App.1991).
“The object of the constitutional guarantee of compulsory process is that the court will exercise its power to compel attendance of witnesses. Scott v. State, 34 Ala.App. 519, 41 So.2d 630 (1949). The court must do all that the defendant calls upon it to do within the legal power of the court to obtain evidence under Article I, § 6. Parsons v. State, 251 Ala. 467, 38 So.2d 209 (1948). The right to compulsory process is guaranteed by the constitution, and neither the legislature nor the courts can deprive a defendant of that right. Bush v. State, 168 Ala. 77, 53 So. 266 (1910).”
Ervin, 584 So.2d at 949. (Emphasis added.)
Moreover, § 12-21-246, Code of Aabama 1975, describes the defendant’s right to subpoena witnesses through the court as absolute.
“(a) In criminal cases, at the request of the state, or the defendant or the defendant’s attorney, the clerk of the court must issue subpoenas for witnesses whose address shall be given by the person requesting the subpoena....
[[Image here]]
“(f) All subpoenas issued while the court is in session commanding the appearance of a witness in a case or proceeding then being heard ... shall be served [by the sheriff on the witness personally or at the witness’s residence].”
*956 Similarly, Rule 17.1(a), Ala.R.Crim.P., states, in pertinent part, “The clerk of the court in which a criminal proceeding is pending shall issue subpoenas at any time for such witnesses as any party may require for attendance at trial and at hearings.” The language of the statute and the rule indicates that they apply to subpoenas requested at any time.[2] Therefore, the trial court erred in refusing the appellant’s request to subpoena Williams.
We note that the court’s duty to issue subpoenas on an accused’s behalf does not require the court to grant a motion for a continuance or a motion for an attachment. The law is well-settled that á motion for a continuance, even when based on an absent witness, is addressed to the sound discretion of the trial court. Pritchett v. State, 446 So.2d 984 (Ala.Cr.App.1984). See Rule 17.5, Ala.R.Crim.P., (“[a]ny witness who, after being subpoenaed, fails to appear ... may be attached by order of the court”) and § 12-21-182(a) (“the attendance of such witness may be compelled by attachment”).
The state contends that the appellant’s motion for a subpoena amounted to a motion for a continuance. However, this assertion is unsupported by the record. The appellant never indicated to the court that he would need additional time to locate Williams. Indeed, Williams had shown up for trial earlier that day, and there was no reason to believe he could not be found within a short time. At the time the subpoena was requested, two defense witnesses and two rebuttal witnesses for the state had yet to testify.
For the foregoing reasons, we hold that the appellant was denied his constitutional right to compulsory process. Because compulsory process “is a fundamental element of due process law,” Washington, 388 U.S. at 19, 87 S.Ct. at 1923, the appellant’s conviction for assault in the first degree is due to be reversed.
II
Because we hold that the trial court erred when it refused to issue the subpoena, it is unnecessary to address the appellant’s remaining issues in depth. However, in the interest of judicial economy, we make several observations.
First, the appellant contends that he was denied the effective assistance of trial counsel. The appellant alleges that, in addition to not issuing a subpoena for Williams, trial counsel failed to investigate his case and failed to prepare an adequate defense. Although we do not pass on the merits of this claim, we note that trial counsel’s reliance on the state’s subpoena list to secure Williams’s testimony borders on ineffective . performance. “[C]ounsel is expected to exercise diligence in preparing his case for trial and for procuring necessary witnesses.” Pritchett, 445 So.2d at 986. This is especially true here because Williams was an eyewitness to the shooting.
Second, the appellant contends that the trial court erred in permitting the state to bolster Jelks’s in-court identification with evidence that Jelks had previously identified the appellant in a photographic lineup. There was no error here because the appellant raised the inference of misidentification during his cross-examination of Jelks. However, we do question the trial court’s decision to allow the jury to view a videotape of Jelks as he identified the appellant’s picture from the lineup. The tape allegedly depicted Jelks in the intensive care unit of a hospital attached to a ventilator. If this is so, introduction of the videotape may have been prejudicial and unnecessarily cumulative because the officer who conducted the photographic lineup, Officer Andre Presley of the Birmingham Police Department, was available to testify to the same facts.
For the reasons mentioned in Part I of this opinion, the appellant’s conviction must be reversed. This cause is remanded to the *957 Circuit Court of Jefferson County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.

. Jelks did not testify at the preliminaiy hearing, and the appellant asserted that he was never able to get a pretrial statement from Jelks.

. Our research does not reveal any distinctions between an "ordinary” subpoena and an "instanter” subpoena, other than the time frame in which they are to be obeyed. Black’s Law Dictionary defines "instanter” as meaning ”[i]mme-diately; instantly; forthwith; without delay.... The term was usually understood to mean within twenty-four hours.” Black's Law Dictionary 799 (6th ed. 1990).