The appellant, Harold D. Woods, was convicted of attempted murder, a violation of §§ 13A-6-2 and 13A-4-2, Code of Alabama
1975. He was sentenced to 25 years' imprisonment.
The evidence presented at trial tended to establish that during the early morning hours of September 15, 1992, the victim Rodney Davis was working at the Peyton Place Restaurant on Graymont Avenue in Birmingham. The restaurant was a family-owned business, and the victim was its night manager.
Starting after midnight and continuing until the restaurant closed, the victim received a number of telephone calls from the appellant, a long-time friend and college roommate of the victim's. The appellant wanted to borrow money from the victim. The victim told the appellant that he did not have any money with him, but that the appellant could come by his parents' house around 9:00 a.m. and get the money then. The appellant also inquired whether the victim would be "going out," and if so, when he would be leaving. The appellant's last telephone call to the victim was made around 3:30 a.m. The victim told the appellant that he was cleaning up the restaurant and that when he finished, he would be going directly home.
Approximately 10 minutes later, the victim saw the appellant outside the front door of the restaurant. The restaurant was closed and the doors were locked because the victim was counting the night's receipts. The victim did not unlock the door and did not let the appellant inside. He noticed that the appellant continued walking past the restaurant and around the left side of the building.
After the victim finished counting the money, he prepared to leave. He collected the cash box, his keys, a pistol, and several other items. He then walked over and unlocked the front door, and his two co-workers preceded him out the front door. Once the victim and his co-workers were out of the restaurant, the victim locked the front door and activated the alarm system.
As the victim turned to walk away from the door, he heard gunshots. He looked toward the left side of the building, from where the gunshots came, and saw the appellant and another man whom he did not recognize. As the victim looked at the appellant, he saw the appellant shoot in his direction.
The victim testified that his first thought was to open the restaurant door so that the *Page 1342 
alarm would be activated. He dropped the cash box and other items in his hand and got back inside the restaurant, but not before he had been shot. Once inside, the victim checked to see if the alarm had gone off and then made his way back toward the front door to check on the cash box's whereabouts. Before he could do so, the victim lost consciousness and fell to the floor.
Prior to the appellant's last telephone call, the victim had telephoned his father to tell him when he would be leaving. This telephone call took place around 3:00 a.m. Around 4:20 a.m., the alarm company notified the victim's father that the restaurant's alarm had gone off. His father went to the restaurant, and arrived to see the paramedics rendering emergency first aid to the victim.
The victim had been shot in the head and neck area. A bullet had lodged at the top of his spine, resulting in almost total paralysis. The victim remained hospitalized for approximately five or six months following the shooting. He remained unable to breathe or communicate without a ventilator. While still hospitalized, and later at trial, the victim identified the appellant as the person who had shot him on September 15, 1992.
The appellant's sole defense was an alibi defense. The appellant was the only defense witness. He contended that he was not the person who shot the victim, and that he was not at the restaurant that night.
 I.
The appellant was originally indicted for first-degree robbery and the attempted murder of Rodney Davis. In September 1993, the appellant's first trial ended in a mistrial on both charges because the jury was deadlocked. The appellant was then tried a second time. In December 1993, the second jury acquitted the appellant of the robbery charge, but was unable to reach a verdict with regard to the attempted murder charge, and a mistrial was again declared as to that charge. The appellant's third trial was conducted in June 1996. Following the third trial, the jury convicted the appellant of attempted murder; this appeal followed.
The appellant now contends that his third trial and subsequent conviction violated his constitutional guarantee against double jeopardy. Specifically, the appellant argues that because both the robbery and attempted murder charges arose out of the same incident, under the doctrine of collateral estoppel, his acquittal on the robbery charge precluded the state from retrying him on the attempted murder charge because, he says, the only issue at the second trial was the identity of the person who had robbed and shot the victim.
The Fifth Amendment's Double Jeopardy Clause protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. Meyer v.State, 575 So.2d 1212, 1217 (Ala.Cr.App. 1990). See also NorthCarolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656
(1969).
However, as the state correctly points out, the general rule is that the prohibition against double jeopardy does not bar a retrial of the defendant following a mistrial. See Grimsley v.State, 678 So.2d 1197, 1208 (Ala.Cr.App. 1996); Ex parteZiglar, 675 So.2d 543, 544-46 (Ala.Cr.App. 1996); McKinney v.State, 567 So.2d 870, 874 (Ala.Cr.App.), cert. denied,567 So.2d 877 (Ala. 1990).
There is, however, a limited exception to this general rule when an appellant's double jeopardy assertion involves the corollary doctrine of collateral estoppel.
 "[T]he Double Jeopardy Clause incorporates the doctrine of collateral estoppel, which may bar a retrial even if the crimes are not the same. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Annot., 9 A.L.R.3d 203 (1966). Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any further lawsuit.' Ashe, 397 U.S. at 443, 90 S.Ct. at 1194; Prince v. State 431 So.2d 565, 568
(Ala.Cr.App. 1982), cert. denied, 431 So.2d 568
(Ala. 1983). Thus, even when different offenses are charged, and the Double Jeopardy *Page 1343 
Clause therefore would not normally bar a second prosecution, collateral estoppel may bar the second trial when a fact previously found in the defendant's favor is necessary to the second conviction. Ashe, 397 U.S. at 446, 90 S.Ct. at 1195. Collateral estoppel may also bar the reintroduction of evidence used against a defendant in a prior prosecution when the State is attempting to use the evidence to prove a fact previously found against it. United States v. Johnson, 697 F.2d 735, 740 (6th Cir. 1983); United States v. Head, 697 F.2d 1200, 1207-08 (4th Cir. 1982), cert. denied, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983). '(T)he rule is well settled that the doctrine of collateral estoppel, as applied in criminal prosecutions, precludes the relitigation of issues determined by a former verdict and judgment, that is those issues actually decided and those necessarily involved in the result.' 9 A.L.R.3d § 7(a). 'Ashe, however, does not prohibit the admission of the same evidence at the second trial, but only prohibits the relitigation of the issues conclusively decided in defendant's favor in the first prosecution.' United States v. Woodward, 482 F. Supp. 953, 956 (W.D.Pa. 1979). 'Evidence introduced in the trial leading to acquittal can be reintroduced in a second trial provided the court finds the fact "which defendant sought to bar was not previously determined in defendant's favor by the acquittal verdict." ' United States v. Hill, 550 F. Supp. 983, 987 (E.D.Pa. 1982). See also Oliphant v. Koehler, 594 F.2d 547 (6th Cir.), cert. denied, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105
(1979).
 "When a previous judgment of acquittal was based upon a general verdict, the rule of collateral estoppel 'requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury would have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." ' Ashe, 397 U.S. at 444, 90 S.Ct. at 1194. 'When a claim is made that collateral estoppel prevents certain evidence from being admitted at trial, a court must determine what the first judgment decided and then must analyze how that determination bears on the second case. See United States v. Mespoulede, 597 F.2d 329 (2d Cir. 1979).' Sabin v. Israel, 554 F. Supp. 390, 391
(E.D.Wis. 1983). See also United States v. Webbe, 558 F. Supp. 55, 56 (D.Nev. 1983). 'The burden, however, is on the defendant in the second case to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict.' United States v. Cala, 521 F.2d 605, 608
(2d. Cir. 1975)."
Morris v. State, 465 So.2d 1173, 1176 (Ala.Cr.App. 1984), rev'don other grounds, 465 So.2d 1180 (Ala. 1985). See also Project:Twenty-Sixth Annual Review of Criminal Procedure, 85 Geo.L.J. 775, 1195-99 (1997).
The appellant argues that his conviction for the attempted murder of Rodney Davis is due to be reversed and a judgment of acquittal rendered based upon the authority of Prince v. State,431 So.2d 565 (Ala.Cr.App. 1982), cert. denied, 431 So.2d 568
(Ala. 1983), and Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189,25 L.Ed.2d 469 (1970). The appellant asserts that, just as was the case in Prince, the only question at issue during his second trial was the identity of the individual who shot Rodney Davis. Thus, he claims, when he was acquitted of first-degree robbery, the ultimate issue of fact — the identity of the perpetrator — was decided in his favor. Based upon our examination of the transcript of the appellant's second and third trials, we disagree.
After a careful review of the transcript of the second trial, we are convinced that the jury's decision to acquit the appellant of the robbery charge could have resulted from the jury's inability to find, beyond a reasonable doubt, that a robbery occurred, and not from an uncertainty as to whether the appellant was present at the scene of the crime. The victim positively identified the appellant as the person who fired gunshots at him. However, no testimony was ever offered regarding what happened to the cash box. Indeed, the only testimony concerning the cash box was the victim's testimony that he dropped the box outside the restaurant's door in his *Page 1344 
attempt to get back inside and trigger the burglar alarm. The victim further testified that he blacked out before he could go back outside and check on the whereabouts of the cash box. For this reason, we are of the opinion that the rationale ofWhite v. State, 378 So.2d 239 (Ala.Cr.App.), cert. denied,378 So.2d 247 (Ala.), aff'd on return to remand, 378 So.2d 247
(Ala.Cr.App.), cert. denied, 378 So.2d 249 (Ala. 1979), is closely akin to the facts in this case. In White, the defendant was charged with robbing several individuals present in a "country store." Each case was tried separately. Following the first trial, the defendant was acquitted of robbing one of the victims. At the second trial, defense counsel made a "motion of autrefois acquit or former jeopardy" based on double jeopardy grounds. The defendant argued that the decision in Ashe v.Swenson, supra, barred any additional trials because the only issue before the jury at the first trial was whether the defendant was one of the robbers. This court rejected the defendant's contention, stating that:
 "We cannot say from the record before us that the only 'rationally conceivable issue in dispute before the jury' in the case in which defendant was acquitted was whether defendant 'had been one of the robbers.' Furthermore, it seems to us that the record is not 'utterly devoid of any indication that the first jury could rationally have found' that Patricia Miller 'had not been a victim' of a robbery, and in such respects this case differs materially from Ashe v. Swenson.
 "Although the evidence in the first case may have been materially different from the evidence in the second case, there is strong indication in the only evidence before us that the State's case against defendant in the first case did not fail by reason of insufficiency of proof as to defendant's presence and participation in the robbery, but on the ground that there was no robbery of the alleged victim in that case. What happened to the four cents the alleged victim had in her pocket and laid upon the counter, the record before us does not disclose. To constitute a robbery there must be, in addition to other elements, a taking of property of another from his person or from his presence or personal physical control or protection."
378 So.2d at 243 (citations omitted).
In White, we remanded the case for a determination of the issues contested during the second trial, before we ultimately concluded that the state was not collaterally estopped from prosecuting the defendant. In this case, no remand is necessary because the transcript of the second trial is part of the record on appeal. Although the identity of the appellant was a seriously contested issue, it was not the only contested issue. Just as in White, we find that there was also a seriously contested issue as to whether the appellant, or anyone else, had taken money as the indictment alleged. Given the fact that the only testimony concerning the cash box and the money contained in that box was the victim's testimony that he dropped the box and that he blacked out before he could get back to check on what happened to it, a genuine issue existed as to whether the appellant had feloniously taken the proceeds of the cash box, as alleged in the indictment. For this reason, the appellant's acquittal on the first-degree robbery charge did not put him in jeopardy as to retrial on the attempted murder charge. Accordingly, the trial court correctly denied the appellant's motion to dismiss based on double jeopardy grounds.
 II.
The appellant also contends that the trial court erred in allowing Birmingham Police Detective Steven Corvin to testify that the victim, while hospitalized, gave a prior consistent statement concerning the identity of the person who had shot him. Specifically, the appellant argues that this statement constituted inadmissible hearsay.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala.R.Evid. Unlike the Federal Rules of Evidence, the Alabama Rules of Evidence do not indicate that identity is aper se exception to the hearsay rule. See Miller v. State,687 So.2d 1281, 1284-85 *Page 1345 
(Ala.Cr.App. 1996); Advisory Committee Notes, Rule 801, Ala.R.Evid.
This does not mean, however, that such a statement relating to identity is inadmissible per se. Alabama continues to recognize the rule that an identification statement may be admissible, but under another theory. For example, Alabama has long admitted identifications when offered to prove the act of identification, rather than the truth of the matter asserted. See, McTerry v. State, 680 So.2d 953, 956 (Ala.Cr.App.), cert.denied, 680 So.2d 957 (Ala. 1996); Thomas v. State,461 So.2d 15, 16 (Ala.Cr.App.), aff'd, 461 So.2d 16 (Ala. 1984). Indeed, one commentator, in addressing the admissibility of extrajudicial identifications, appears to have reconciled this line of prior substantive law with Rule 801(d)(1), Ala.R.Evid., in reaching a logical resolution to the problem of extrajudicial identifications. C. Gamble, McElroy's AlabamaEvidence § 273.01 (5th ed. 1996).
At trial, the prior testimony of the victim was read into the record during the state's case-in-chief.[1] The victim, at the first and second trials, had positively identified the appellant as the man who had shot him. Detective Corvin was also called during the state's case-in-chief, but his testimony was limited to the fact that during his investigation of the shooting, he interviewed the victim while he was hospitalized several days after the incident.
The appellant's sole defense was an alibi, and he was the only defense witness. He testified that he had called the victim earlier that night from various locations, but he denied ever being in the vicinity of the Peyton Place Restaurant. He further denied shooting the victim. He contended that the victim must have been mistaken in his identification of the appellant as the shooter.
After the defense rested, the state recalled Detective Corvin as a rebuttal witness, during which testimony the evidence at issue was elicited. In summary, Detective Corvin testified that he interviewed the victim in the hospital following the shooting. Also present at Detective Corvin's hospital interview was the victim's father. Detective Corvin testified that the victim was "on a life support system" and that he could not speak; he was, however, able to communicate with Detective Corvin by blinking his eyes. After Detective Corvin ascertained that the victim was coherent, he asked him if he knew the person who shot him. The victim blinked his eyes to indicate that he did. Detective Corvin then asked the victim to spell out his assailant's name, by indicating through blinks when Detective Corvin got to the correct letter of the alphabet. Detective Corvin continued this process for each letter of the name. After the victim had spelled "H-A-R" or "H-A-R-0," Detective Corvin asked the victim if Harold Woods, the appellant, was the person who shot him. The victim indicated that Harold Woods was the person who shot him. Several days later, Detective Corvin returned to the victim's hospital room to confirm the identity of the assailant. The victim, using the same procedure, once again identified the appellant as his assailant.
As previously stated, an identification is admissible into evidence if it is offered to prove the act of identification, rather than the truth of the matter asserted. "The general rule is that evidence by a third party of an extrajudicial identification is admissible in rebuttal of testimony tending to impeach or discredit the identifying witness, or to rebut a charge, imputation or inference of falsity." Thomas v. State, 461 So.2d at 16, quoting Aaron v. State, 273 Ala. 337, 345,139 So.2d 309 (1961), cert. denied, 371 U.S. 846, 83 S.Ct. 81,9 L.Ed.2d 82 (1962). Because this rule was not followed inThomas, and the trial court allowed testimony concerning the extrajudicial identification before the victim's identification of the appellant had been challenged, the appellant's conviction was reversed. In McTerry, supra, 680 So.2d at 956, however, this court recognized that it was not error to permit the state to bolster *Page 1346 
the victim's in-court identification with evidence that he had previously identified the appellant "because the appellant [had] raised the inference of misidentification during his cross-examination of [the victim]."
Here, the victim's prior identification was not being offered to prove the truth of his identification, but rather, to rehabilitate the victim's in-court identification of the appellant by proof of a prior consistent statement. Thus, the trial court correctly allowed Detective Corvin's testimony regarding the victim's extrajudicial identification of the appellant into evidence.
 III.
The appellant next contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the state failed to prove a prima facie case of attempted murder. Specifically, the appellant argues that the state failed to prove (1) that he was the person who attempted to murder the victim, and (2) that he had the requisite intent to commit the crime.[2] We disagree.
Section 13A-6-2(a), Code of Alabama 1975, provides, in pertinent part:
"A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person. . . ."
Section 13A-4-2(a), Code of Alabama 1975, provides, in pertinent part:
 "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
In determining whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution.Bayhi v. State, 629 So.2d 782, 788 (Ala.Cr.App. 1993). The Court must accept as true the evidence introduced by the prosecution, must make all legitimate inferences from that evidence, and must consider that evidence in the light most favorable to the prosecution. McKinney v. State, 654 So.2d 95,99 (Ala.Cr.App. 1995); Johnson v. State, 623 So.2d 444, 447
(Ala.Cr.App. 1993).
"In Alabama, a person commits the crime of attempt to murder if he intends to cause the death of another person and does any overt act towards the commission of that intent." Chaney v.State, 417 So.2d 625, 626 (Ala.Cr.App. 1982); see also Wheelerv. State, 570 So.2d 876 (Ala.Cr.App. 1990). Here, evidence that the appellant attempted to kill the victim, Rodney Davis, was supplied by Davis himself. In testimony from the appellant's prior trial that resulted in a mistrial, Davis positively identified the appellant, his longtime friend and former college roommate, as the person who shot him that night. This act by the appellant was an overt act towards the commission of murder.
As for the appellant's claim that the state failed to prove that he intended to kill the victim, this Court has held in a number of prior decisions that intent can be inferred from the use of a deadly weapon. See e.g., Long v. State, 668 So.2d 56,60 (Ala.Cr.App. 1995); Buskey v. State, 650 So.2d 605, 609
(Ala.Cr.App. 1994); Barnes v. State, 571 So.2d 372, 374
(Ala.Cr.App. 1990). Not only did the appellant shoot the victim, but he shot him in one of the body's most vulnerable areas — the head and neck. The gunshot caused severe injury, resulting in almost total paralysis, and prohibiting the victim even from breathing without the aid of a respirator. Indeed, the victim's death was ultimately attributable to the gunshot wounds he suffered outside the restaurant that night.[3] *Page 1347 
The jury's verdict was reasonably supported by the evidence. Accordingly, the trial court's denial of the appellant's motion for a judgment of acquittal was correct.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
[1] Rodney Davis died after the appellant's second trial but before the third trial, and thus, was unavailable to testify in person at the third trial. Davis, however, testified at the appellant's first and second trials, and identified the appellant as the person who had shot him. Because Davis died before the third trial began, his testimony from the second trial was read into evidence at the third trial.
[2] The appellant also appears to argue that he was never identified as the perpetrator of this offense during the third trial. His allegation is based on the fact that "[although other witnesses identified the Defendant as an individual named Harold Woods who had been friends with Rodney Davis, no one identified the Defendant in the third trial as the person who Rodney Davis had previously identified as the perpetrator of the offense.]" Such a contention amounts to sophistry and does not warrant further consideration by this Court.
[3] Although the victim's death was ultimately attributable to the injuries inflicted by the appellant, the appellant could not be tried for murder because the victim died more than one year and a day after he was shot by the appellant. Pursuant to the common law rule, a defendant can be prosecuted for homicide only if the victim dies within one year and a day of the defendant's wrongful act. See Smith v. State, 354 So.2d 1167,1170 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 1172 (Ala. 1978); Flannagin v. State, 48 Ala. App. 559, 563, 266 So.2d 637
(1971), aff'd, 289 Ala. 177, 266 So.2d 643 (1972); Howard v.State, 24 Ala. App. 512, 515, 137 So. 532, cert. denied,223 Ala. 529, 137 So. 535 (1931).